**James Wesley ISENHOWER et al., Petitioners,**

v.

**G. D. BELL, Respondent.**

**No. A–9068.**

Supreme Court of Texas.

Feb. 20, 1963.

Rehearing Denied March 20, 1963.

Runge, Marschall & Hall, San Angelo, for petitioners.

Davee & Davee, Brady, for respondent.

GREENHILL, Justice.

The judgment heretofore entered is set aside; and the opinion heretofore rendered is withdrawn, and the following is substituted therefor.

G. D. Bell and W. L. Jackson, as partners, owned the Bell Feed Store in Brady, Texas. Bell desired to sell, and he ultimately entered into a written agreement to convey his interest to W. L. Jackson and J. W. Isenhower. The parties soon fell into disagreement, among other things, as to how much Bell and the store owed and who was obligated to pay the outstanding debts. This suit was brought by Jackson and Isenhower against Bell for damages for fraud and for rescission. In particular, Jackson and Isenhower alleged that Bell had wrongfully represented that the debts of the store did not exceed $8,500. After a trial by jury, judgment was entered against Bell, and for Jackson and Isenhower for damages. That judgment was reversed and the cause was remanded for a new trial by the Austin Court of Civil Appeals, 356 S.W.2d 485. Jackson and Isenhower applied to this Court for writ of error. Bell filed no application. The case has been handled on appeal in an unorthodox fashion, and our disposition of the case is limited by the points of error which have been preserved and presented.

The only point of error which Jackson and Isenhower have in this Court is that "The Court of Civil Appeals erred in reversing the judgment of the district court * * * because such action is not founded on fundamental error or on any assigned error."

We have examined the points of error of Bell in the Court of Civil Appeals and agree that the Court of Civil Appeals, in its opinion, did not reverse the case on any assigned error. It did, however, reverse the case and remand it for a new trial. Under those circumstances, this Court will review the points of error in Bell's brief in the Court of Civil Appeals to see if there was error assigned which would support the judgment of the Court of Civil Appeals. Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 383 (1952); Calvert, "Supreme Court Review," 21 Texas Bar Journal 75 at 112.

As stated, Bell did not bring an application for writ of error to this Court complaining of the failure of the Court of Civil Appeals to sustain his points which would require a reversal and *rendition* of the judgment.

Bell had six points in the Court of Civil Appeals. His points two and three, assuming them to be properly preserved and presented, did present points which, if sustained, would require a *remand* of the cause. They will be discussed below. Bell's points one, four, five, and six, if sustained, would have required a *rendition* of the judgment. They deal with the failure to sustain special exceptions, which would result in rendition of the case if sustained, failure to grant an instructed verdict, failure to grant Bell's motion for judgment notwithstanding the verdict of the jury, and similar matters. We do not regard these points as being before us.

Bell's third point deals with special issues requested by Bell and refused by the trial court. This point has 10 parts or subpoints, lettered (a) through (j), complaining of the trial court's failure to submit his requested issues 1 through 10. The issues which were refused are not set out. The first subpoint reads: "The trial court erred in overruling and not submitting to the jury appellant's special requested charge No. 1, same being amply raised by the evidence." The other subpoints are the same except the number of the requested special issue is changed.

Rule 418, Texas Rules of Civil Procedure, deals with the requirements of briefs in the Court of Civil Appeals. Section (b) of Rule 418, regarding points of error, says, "Such points will be sufficient if they direct the attention of the court to the error relied upon * * *." Section (c), which deals mainly with argument, provides in part, "If complaint is made of any charge given or refused, such charge shall be set out in full." This was not done either in the point of error or in the argument.

The substance of the requested special issue No. 6 is set out in the argument under that point; and we shall here assume that the point is therefore preserved. Assuming that the point is preserved, it does not present error. Subpoint (f) of Point 3 complains of the error of the trial court in refusing to submit Bell's special requested issue No. 6. Examining the transcript, we find the requested issue reads, "Do you find * * * that the plaintiff Isenhower knew *or should have known by use of reasonable diligence,* the amount of the indebtedness owed by Bell Feed Store at the time of purchase."

As pertinent here, this was a suit for fraud. It was alleged, and the jury found, that Bell represented that the debts of the store did not exceed $8,500; that the representation was of a material fact; that Isenhower relied thereon; and that it was untrue. Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care. Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808 (1888); Moore v. Beakley (Tex.Com.App.1919), 215 S.W.2d 957. An affirmative answer to the requested special issue based upon what Isenhower *should have known* would not, therefore, have constituted a defense to the alleged fraud. The trial court did not err in declining to submit the requested issue.

Bell's requested issue No. 7 would have inquired whether Isenhower was negligent in not ascertaining the amount of indebtedness owed by the feed store. The trial court properly refused to submit this issue for the same reason.

Bell's requested issue No. 1 would have inquired whether Bell guaranteed that the indebtedness of the store did not exceed $8,500. Special issue No. 3 which was given by the court inquired whether Bell represented to Isenhower that the debts

owed by the store did not exceed $8,500. The issue given, therefore, submitted the substance of Bell's requested issue No. 1 and was no more onerous on him. The court did not err in refusing to submit the issue.

■ Bell's requested issues 2 and 3 (inquiring whether such representation induced Bell to enter into the agreement) were conditioned upon an affirmative answer to his requested issue No. 1. The court therefore did not err in refusing to submit those issues.

Subpoint (d) of Bell's third point of error says that the trial court erred in refusing to submit his requested issue No. 4. The issue is not set out. The entire argument under the point is:

"(d) S.F. P. 132, P. 139, P. 141, and P. 143."

■ One of the main purposes of Rule 418 is to require counsel to put before the Court of Civil Appeals in the brief at least the substance of the point relied upon for reversal and to relieve the appellate court from having to piece together a point for the appellant from an examination of the transcript and the statement of facts. A bare reference to a requested issue No. 4 and a reference to four pages in the statement of facts, without stating the substance of any of the material referred to, is not

enough. The point was, therefore, not preserved. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). The same is true of Bell's requested special issues 5, 8, 9 and 10.[1]

Bell's second point of error dealt with the admissibility of evidence. On October 2, 1958, Bell and Isenhower entered into a preliminary agreement whereby Isenhower would purchase Bell's interest in the store for $12,000 and the assumption of accounts and notes owed by Bell. The agreement, which is set out in full in 356 S.W.2d at pages 486 and 487, states that the parties will execute, by October 15, 1958, a detailed contract consummating the sale; and that if no such contract is executed by that time, the preliminary contract would be of no effect. The final paragraph reads, "It is agreed that the debts of Bell Feed Store including open accounts and notes, will not exceed the amount of $8,500.00."

On October 4, 1958, a contract was entered into whereby Bell sold his interest to Isenhower and Jackson. This instrument, which is set out in full in 356 S.W.2d at pp. 487 and 488, says that "[w]hereas on October 2, 1958, the said G. D. Bell and James Wesley Isenhower entered into a preliminary sales agreement * * *; now, therefore to terminate said partnership and consummate said sale, the parties agree as follows * * *." Then follow the terms of the sale. This contract does not have an

---

[1.] Subpoint (e) of point 3 is that the trial court erred in not submitting his special requested issue No. 5, same being amply raised by the evidence. The issue is not set out. The argument under the point is, "The pleadings and the evidence raised this issue of fact S.F. P. 37, P. 140. We believe the jury would have answered this special issue in favor of appellant."

Subpoint (h) of point 3 is that the trial court erred in not submitting his requested issue No. 8. It is not set out. The argument under the point is: "There was considerable evidence on the egg money, S.F. P. 165, P. 166, and P. 167, and the same was very much in dispute and raised by both the pleadings and the evidence. The jury was entitled to have this Special issue submitted by the

Trial Court. We believe the jury would have answered favorable to the Appellant."

Subpoint (i) likewise says the court erred in failing to submit his requested issue No. 9. It is not set out. The argument under the point is: "We believe that Appellees assumed payment of this account as set out in Exhibit 'B' and being the final sales contract dated Oct. 4, 1958 and acknowledged Oct. 20, 1958."

Subpoint (j) complains of the failure to submit his requested issue No. 10. It is not set out. The argument under the point is: "It is appellant's position that Appellee agreed to pay this amount as set out in the final sales contract dated Oct. 4, 1958 and acknowledged Oct. 20, 1958."

agreement, contained in the preliminary contract of October 2, that the debts will not exceed $8,500.

Upon the trial of the case, Bell's counsel objected to the introduction of the agreement of October 2 mainly on the ground that it had been merged into the final agreement of October 4 and because of the parol evidence rule.

■ When the issue of fraud is raised, competent evidence that has a reasonable bearing on the issue is admissible and may be considered by the jury. All the facts and circumstances leading up to and connected with the transaction are, ordinarily, admissible. 20 Am.Jur. 320, Evidence § 345.[2]

■ It is our opinion that the trial court correctly admitted the agreement in evidence as part of the circumstances to prove Isenhower's cause of action for fraud. He was attempting to prove that Bell had represented to him that the debts would not exceed $8,500, and that he was induced to enter into the agreement thereby. The fact that such a representation had been put in writing in the agreement of October 2 would strengthen Isenhower's case in this regard, and would be an admissible circumstance for the jury to consider in passing upon the fraud issue. This being so, it is unnecessary for us to consider Isenhower's arguments that the two instruments, executed in close proximity to each other, were all part of the same transaction and should be considered together.

■ The final portion of Bell's second point of error complains of the admission in evidence of testimony from Isenhower as to the amount owed by the feed store to Ralston-Purina Company, and what the status of that account was. The argument under the point does not refer the court to the place in the two-volume statement of facts where such testimony may be found or the objections thereto made on the trial. Be that as it may, the amount of the debts and to whom they were owed were a legitimate inquiry in the suit; and the trial court did not err in admitting the testimony.

■ Finally, there is the question as to whether there was fundamental error requiring a reversal of the case. We find none. The suit was properly brought in a court having jurisdiction of the subject matter. Assuming, without deciding, that lack of indispensable parties is fundamental error, the creditors mentioned in the Court of Civil Appeals are not such as to prevent the court from deciding the case between the people who were parties to the litigation. The Court of Civil Appeals concedes this by saying, "Our statement that all creditors of the Feed Store should be made parties was suggestive only, and was made in order to prevent a multiplicity of suits." 356 S.W. 2d at 489. Nor is there any error which directly and adversely affects the interest of the public generally. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947); McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265; St. Paul Fire & Marine Insurance Co. v. Murphree, Tex., 357 S.W.2d 744 (1962).

Having examined the points of error of Bell in the Court of Civil Appeals upon which the judgment of reversal and remand could be sustained, and having found no such reversible error, our duty is to reverse the judgment of the Court of Civil Appeals, and to affirm the judgment of the trial court. Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952). It is so ordered.

The Respondent Bell is granted 15 days in which to file a motion for rehearing.

2. The section of American Jurisprudence deals with other subjects than fraud, including duress and undue influence. Those matters are not before us, and the citation to the section is as to the question of fraud.