Joe H. WEST and Drilling Inspection
Materials and Equipment, Inc.,
Appellants,

v.

Ronald L. CARTER and Sheila
Carter, Appellees.

No. C14–85–129–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 29, 1986.
Rehearing Denied June 26, 1986.

Jerry L. Schutza, Houston, for appellants.

Arnold Anderson Vickery, Houston, for appellees.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This appeal originates in Ron and Sheila Carter's purchase of a business from appellant Joe West. After the sale was completed, the Carters became aware that the business was not the success that West had represented it to be. The Carters sued West on theories of fraud, deceptive trade practices violations, and trespass and unlawful repossession. Judgment was entered for the Carters for $704,750.00. West now raises twenty points of error

contending: (1) judgment was improper under fraud and deceptive trade practices theories; (2) the evidence was insufficient to support the judgment; (3) the damages and attorney's fees awarded were incorrect; (4) there were various errors in the submission of special issues; and (5) part of the Carters' final jury argument was impermissible. We affirm.

Because the sufficiency of the evidence is challenged, we will begin with a somewhat detailed summary of the facts. Joe West was the owner and president of Drilling Inspection Materials and Equipment, Inc. (DIME). Through his company West sold magnetic iron powder used in the pipeline industry to inspect pipes for flaws. West sold the Quebec Metal Powders (QMP) brand of powder, which he obtained from a mill in Quebec.

Sometime in 1983, West listed his business for sale with a business brokerage firm. Ron and Sheila Carter expressed an interest in purchasing the business and were put in contact with West. After a series of meetings and negotiations with West and with their accountant, the Carters agreed to buy the business for $440,-000.00.

Although the Carters were given prior access to West's offices and files, it was not until after the purchase was consummated that they began to make a number of discoveries about their new business. The primary discovery concerned a competitive powder, Pyron. West had mentioned Pyron to the Carters, but assured them that Pyron was an inferior powder and did not indicate that there was any cause for concern about the competitive market. Mr. Carter found a book that indicated to the contrary. This book contained documents showing the number of pounds of QMP powder bought by various customers and the price the powder was sold for. These documents showed that the amount sold and the prices had been dropping for many of the major clients for a number of months prior to the sale. Through some investigation, the Carters also learned that Pyron powder was being distributed in

Houston and for a price substantially lower than that charged for QMP. At trial, several of the sales managers of West's major customers were called to testify. Each of them testified that they switched totally or partially from QMP to Pyron because Pyron was of an acceptable quality and was substantially cheaper. Each also testified that West was aware of this situation prior to the sale, and, in fact, had attempted to obtain price concessions from QMP to meet the competition. The Carters testified, however, that they were not made aware of any of this information prior to the purchase of DIME.

Having set out the pertinent facts, we now turn to West's third, fourth and ninth points of error which challenge the sufficiency of the evidence. West contends the evidence was inadequate to support three critical findings: (1) that the representations made by West were fraudulent; (2) that there was malice or ill will by West to the Carters; and (3) that the Carters suffered $340,000.00 in actual damages. He asserts there is no, or, alternatively, insufficient evidence to support these findings. In reviewing his contentions, we use the well established standards of review. In deciding the "no evidence" points, we consider only the evidence which, viewed in the light most favorable to the verdict, supports the jury's findings. If there is any supporting evidence, the verdict will be upheld. In deciding the factual insufficiency points, we consider all the evidence, and will uphold the verdict if there is evidence of probative value to support the jury's findings. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Northwest Mall, Inc. v. Lubri-Lon International, Inc.*, 681 S.W.2d 797, 801–02 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ Our review of the record convinces us that there was ample evidence before the jury of fraudulent representations, malice, and ill will. The most obvious example concerns West's representations that the Carters would make plenty of money from the business and that there was no need

for concern about Pyron. As detailed above, while West was making these statements, many of his major clients were switching most or all of their business to Pyron. West was not in the dark about these transactions. Each client specifically told him he was switching to Pyron because it was cheaper. Yet, according to the Carters, West did not apprise them of these changes. Additionally, when West listed the business with the brokerage company, he represented that one customer bought by the "truckload." However, at the time of purchase, most clients were not purchasing any QMP powder, much less by the truckload. From the evidence adduced at trial, the jury could have believed that West concealed information from and lied to the Carters about the state of the business. Although West himself testified that the Carters had all of the information concerning changes in the business, there was ample evidence that West made fraudulent representations and did so with malice. Appellant's third and fourth points of error are overruled.

■ The trial court awarded $340,000.00 in actual damages, which was the difference between the contract price and the fair market value. Appellant acknowledges that this is the proper measure of damages, but contends that the value witness did not give a competent opinion in support thereof. The evidence indicates that the Carters contracted to pay $440,000.00 for DIME. The Carters' accountant, who reviewed DIME'S records and advised the Carters concerning the purchase, testified that in his opinion DIME was only worth $50,000.00 on the date of sale. This opinion was based on conversations with Mr. Carter and sales information demonstrating a decline in the business prior to the sale. We believe the accountant's testimony met the requirements of the Texas Rules of Evidence and the evidence was therefore sufficient to support the jury's award. *See* Tex.R.Evid. 701. Appellant's ninth point of error is overruled.

■ In his first point of error, appellant complains that the special issues sub-

mitted did not contain all the necessary elements of fraud. Specifically he contends that the jury was not asked whether West intended his statements to be acted upon. This contention was not, however, raised as an objection to the charge, and is therefore waived. Tex.R.Civ.P. 274; *Ward v. First State Bank*, 605 S.W.2d 404, 407 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Additionally, this point falls within the "cluster of issues" principle of Rule 279. Tex.R.Civ.P. 279. Under this principle, when a ground of recovery consists of more than one issue, if one or more of the issues necessary to sustain the ground of recovery is submitted to and answered by the jury and one or more issues is omitted without objection by the party complaining of the judgment, then the omitted issue, if raised and supported by the evidence, must be deemed as found by the trial court to support the judgment. *Williams v. Northrup*, 649 S.W.2d 740, 746 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). We believe the unsubmitted issue concerning the Carters' reliance and action upon West's representations was supported by the evidence and is therefore deemed as so found by the trial court. Appellant's first point of error is overruled.

■ Special issue nine inquired whether West failed to disclose information concerning goods or services when such information was known at the time of the transaction and whether such failure to disclose was intended to induce the Carters into a transaction into which they would not have entered had the information been disclosed. The jury answered "We do." West now complains in point five that recovery on this basis was improper because there was no duty to disclose those facts. While there may or may not have been a common law duty to disclose, that is irrelevant in this case. This issue was framed to provide recovery under section 17.46(b)(23) of the DTPA. Judgment under this section is statutory in nature and therefore common law defenses cannot be used to defeat the claim. *See Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 865 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Point of error five is therefore overruled.

■ West next makes numerous complaints about the assessment of damages and attorney's fees. In point two he contends that attorney's fees were not recoverable because this was an action for fraud. The Carters, however, also recovered under the DTPA, under which attorney's fees are recoverable. Tex.Bus. & Comm.Code Ann. § 17.50(d) (Vernon Supp. 1986). Consequently, appellant's second point is without merit.

■ In his seventh point of error, West contends that the trial court erred in awarding damages for mental anguish because there was no physical injury to the Carters. The supreme court has addressed this issue adversely to West in *Luna v. North Star Dodge*, 667 S.W.2d 115 (Tex. 1984). In *Luna* the court held that a finding that DTPA violations were committed *knowingly* is sufficient to support recovery of mental anguish damages. *Luna*, 667 S.W.2d at 117. The jury here specifically found that the DTPA violations were committed knowingly and mental anguish damages were therefore properly awarded. Appellant's seventh point of error is overruled.

■ In his tenth point, West contends that two issues concerning the DTPA were not supported by the pleadings, namely: (1) whether West caused confusion and misunderstanding as to the source, sponsorship, approval or certification of goods; and (2) whether he disparaged the goods or services of another. The Carters, however, filed a supplemental petition responding to West's special exceptions which apparently raised these defects. (The exceptions are not in the record). The Carters then stated that they were invoking, among other things, sections 17.46(b)(2) and (8) of the DTPA. The referenced items are those which West now claims to be missing. Consequently, this point of error is without merit.

■ West next contends in points sixteen, seventeen and eighteen that certain

of the special issues concerning punitive damages were improperly submitted and therefore did not support the verdict. However, in each instance West raises objections that he did not assert in the trial court. Consequently, the objections are waived. Tex.R.Civ.P. 274; *Citizens State Bank v. Bowles,* 663 S.W.2d 845, 850 (Tex. App.—Houston [14th Dist.] 1983, error dism'd). These points of error are overruled.

■ In point of error fourteen, West contends that the trial court erred in submitting an issue on lost profits. However, he fails to cite any authority for this contention. Additionally, from his brief, three-sentence "argument" we are unable to discern the basis of his complaint. While recognizing that the briefing rules are to be liberally construed, this brief of the argument does not meet even our minimal requirements. West's fourteenth point of error is therefore waived. Tex.R.Civ.P. 414, 422; *Perez v. Baker Packers,* 694 S.W.2d 138, 142 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Beaty v. Bales,* 677 S.W.2d 750, 758 (Tex.App.—San Antonio 1984, writ ref'd n.r.e). *But c.f. Rogers v. Stephens,* 697 S.W.2d 75, 78 (Tex.App.—Fort Worth 1985, writ dism'd) (point of error considered where appellant cited statute and cases, recited testimony, and made brief argument).

■ In point of error eight, West contends that the Carters were not entitled to damages under the DTPA because they did not provide proper notice to West as required by DTPA section 17.50A. This section states that written notice of the complaint and damages sought is a prerequisite to filing suit under the DTPA. Tex.Bus. & Com.Code Ann. § 17.50A (Vernon Supp. 1986). However, in order to raise non-compliance with the notice statute as error on appeal, West must initially have raised the Carters' failure to plead or prove compliance through special exceptions, objection to testimony, or any other form of disagreement. *See* Tex.R.Civ.P. 90; *Pool Co. v. Salt Grass Exploration, Inc.,* 681 S.W.2d 216, 219 (Tex.App.Houston [1st Dist.] 1984, no

writ). While there was some discussion between the trial judge and the attorneys about notice prior to the submission of the charge, the substance of the discussions does not make clear what complaints, if any, West had concerning non-compliance. Consequently, since West did not specially except to the Carter's failure to plead compliance with section 17.50A or otherwise direct the trial court's attention to this problem, he has waived any error therein. *See Silva v. Porowski,* 695 S.W.2d 766, 768 (Tex.App.—El Paso 1985, writ ref'd n.r.e.); *Pool Co.,* 681 S.W.2d at 219. The award of damages to the Carters under the DTPA was proper, and point of error eight is overruled.

West's sixth and fifteenth points of error are somewhat more problematic. Both concern special issue twelve, which reads as follows:

> Do you find from a preponderance of the evidence that, Ronald L. Carter knew, or by the exercise of reasonable diligence should have known, of the false representations or failures to disclose in relation to the sale of the business prior to May 21, 1984.

The jury answered "We do." West now claims that the Carters could not have been deceived since Mr. Carter knew the representations were false.

We initially note that the purpose of this special issue, submitted by West, was to create a defense to fraud. As stated in *Thrower v. Brownlee,* "[A]ctual knowledge negatives deception." *Thrower v. Brownlee,* 12 S.W.2d 184, 187 (Tex.Comm.App.—1929). Before commenting upon the substantive law, however, we must first consider the use of the disjunctive in this special issue that asks whether Ronald Carter "knew, *or* by the exercise of reasonable diligence should have known" of the misrepresentations or failures to disclose. Our review of the record convinces us that there was at most a scintilla of evidence supporting the query of whether Mr. Carter *knew* of the false representations and failures to disclose. There is, however, some evidence that he could have gained

this knowledge through the exercise of diligence. Consequently, our analysis turns to the effect of the possibility that Mr. Carter could have obtained the information.

The supreme court has discussed knowledge of falsity as a defense to fraud in three cases, with seemingly conflicting results. *Isenhower v. Bell,* 365 S.W.2d 354 (Tex.1963); *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962); *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1958). The primary case in which later cases find their basis is *Courseview.* The court in *Courseview* announced this rule: "In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated." *Courseview* at 205. Although this blank statement of the law appears to support West's position, a more careful reading reveals that the controlling issue in *Courseview* was whether the statute of limitations could be interposed as a defense in an action for fraud. The court then used the well-settled directive that the statute of limitations begins to run when the fraud is discovered or by the exercise of reasonable diligence might have been discovered. *Courseview* at 204–05.

Although *Courseview* was strictly limited to the effect of the statute of limitations defense in a fraud case, the supreme court created a corollary of the *Courseview* rule in *Thigpen v. Locke,* which did *not* involve the statute of limitations. The *Thigpen* court used a "narrower application" of the rule excerpted above to conclude that a party to an arm's-length transaction must read what he signs and cannot later claim that he did not know what he was signing. *Thigpen* at 251.

After reading and analyzing *Thigpen* and *Courseview,* we cannot follow the line of cases using their holdings to interject the possibility of discovering fraud as a defense thereto. *See Lawler v. Federal Deposit Insurance Corp.,* 538 S.W.2d 245 (Tex.Civ.App.—Beaumont 1976, writ ref'd

n.r.e.); *Ladd v. Knowles,* 505 S.W.2d 662 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *City of Houston v. Howe & Wise,* 373 S.W.2d 781 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.). *But see Jupe v. Schertz,* 604 S.W.2d 405 (Tex.Civ.App.—San Antonio, writ ref'd n.r.e.). These cases are limited to their facts: statute of limitations problems and failures to read documents before signing.

Instead, we find *Isenhower* to be controlling. In *Isenhower* an issue was requested inquiring: "Do you find ... that the plaintiff Isenhower knew *or should have known by use of reasonable diligence,* the amount of the indebtedness owed...?" *Isenhower* at 357. (Emphasis in original). The court then announced the following rule of law: "Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care." The court concluded that an affirmative answer based upon what Isenhower *should have known* would not have constituted a defense to the alleged fraud. *Isenhower* at 357.

As noted above, there was no credible evidence in the instant case that Mr. Carter knew of the false representations. Consequently, the only possible defense supported by the evidence and jury findings is that Mr. Carter by the exercise of reasonable diligence should have known of the false representations. Under *Isenhower* this does not constitute a defense to fraud. The jury's finding was therefore immaterial and was properly diregarded by the trial court. Tex.R.Civ.P. 301. *See C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966). *See also Colvin v. Allsworth,* 627 S.W.2d 430; 431–32 (Tex.App.—Houston [1st Dist.] 1981, no writ). West's sixth point of error is overruled.

In a similar vein, West argues that Mr. Carter's knowledge as of May 21, 1984,

somehow creates a release. This argument is based on the fact that on May 21 the Carters and West entered a supplemental agreement which was a "final settlement of the purchases." West therefore suggests that since the Carters knew of the false representations prior to signing the settlement agreement, West was released from accountability when they entered this agreement. The failure to obtain a definite jury finding on falsity is fatal to this argument as well. As with fraud, there cannot be release without actual awareness. *See Schmaltz v. Walder,* 566 S.W.2d 81 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Accordingly, West's fifteenth point of error is overruled.

Similarly, West's nineteenth point of error, in which he claims that punitive damages were precluded by the Carter's knowledge, is overruled. Since the issue was immaterial, it does not have an effect on the judgment. Furthermore, West's claim of excessiveness of the punitive damages is overruled. West cites no authority for the argument, makes no record references, and, in fact, makes no argument in support of this claim. *See* Tex.R.Civ.P. 414; *Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 576 (Tex. App.—Houston [14th Dist.] 1983) *aff'd in part, rev'd in part on other grounds,* 704 S.W.2d 742 (Tex.1986).

In point of error eleven, West contends that the judgment was erroneous because it awarded mental anguish damages to *both* Mr. and Mrs. Carter, when in fact these damages should have been awarded only to the individual who suffered them. We gather that West suggests the judgment should have awarded Mrs. Carter's $4,500.00 mental anguish award to her alone, and awarded Mr. Carter's $3,000.00 to him alone. We first note that West again has presented no authority for his argument. *See Bellefonte,* 663 S.W.2d at 576. Additionally, we do not believe West is in a position to complain as the amount of damages for which he is liable would not be altered by his suggested change in the judgment.

In point twelve, also unsupported by authority, West contends that the trial court erred in awarding a judgment against DIME because no special issues were submitted as to the corporation. However, the record contains evidence that DIME was wholly owned by West and that he conducted his business through DIME. An omitted issue, if raised and supported by the evidence, must be deemed as found by the trial court as to support the judgment. Tex.R.Civ.P. 279; *First National Bank v. Hackworth,* 673 S.W.2d 218, 224 (Tex.App. —San Antonio 1984, no writ). Appellant's twelfth point of error is overruled.

West complains in point of error thirteen that certain statements made by the Carter's attorney in final argument necessitated a mistrial. The jury arguments, however, were not included in the statement of facts. Consequently, West's thirteenth point of error cannot be considered on appeal. *Commercial Standard Insurance Co. v. Southern Farm Bureau Casualty Insurance Co.,* 509 S.W.2d 387, 392 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

Finally, in his twentieth point, West fires what the Carters' attorney accurately describes as a "31 shot blunderbuss salvo of quibbles" at the charge. In this single point he attacks 31 special issues with no authority for his complaints, and little, if any, supporting argument. This point of error is "multifarious" defined. *See Atlantic Mutual Insurance Co. v. Middleman,* 661 S.W.2d 182, 188 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.); *Townplace Homeowners' Association, Inc. v. McMahon,* 594 S.W.2d 172, 175 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). We therefore decline to consider this point of error.

The judgment of the trial court is affirmed.