Tommy **HELLE**, Appellant,

v.

Jim **HIGHTOWER**, Commissioner of the Department of Agriculture, et al., Appellees.

No. 3–86–130–CV.

Court of Appeals of Texas, Austin.

Aug. 12, 1987.

Rehearing Denied Sept. 16, 1987.

Donald W. Allee, Edinburg, for appellant.

Jim Mattox, Atty. Gen., Ken Cross and Brian E. Berwick, Asst. Atty. Gen., Austin, for appellees.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellant, Tommy Helle, filed a declaratory judgment suit in the district court of Travis County pursuant to Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 12 (Supp.1987) ("APTRA"). By his suit, Helle sought a declaration concerning the validity of certain rules promulgated by appellees, the Texas Department of Agriculture and its Commissioner, Jim Hightower. The rules relate to the use and application of pesticides. After hearing, the district court rendered judgment declaring the rules valid. This Court will affirm the judgment.

Helle farms in Hidalgo County and the Department's rules affect his farming operation. After the Department proposed the rules, Helle and others appeared at public hearings and opposed the adoption of the rules. The Department, nonetheless, promulgated the rules which became effective in August 1985.

The rules in controversy may be found at 4 Tex.Admin.Code §§ 7.25–7.31 (1986). The content of those rules may be summarized as follows:

§ 7.25—sets out the scope and purpose of the rules and defines certain terms to be used in the rules;

§ 7.26—sets out circumstances under which certain affected persons may request prior notification of pesticide application and details methods by which the farm operator may notify;

§ 7.27—describes the duties of the farm operator in overseeing re-entry into fields by workers following application of pesticide;

§ 7.28—sets forth the warnings the farm operator must give to workers prior to re-entry into a field after pesticide application;

§ 7.29—forbids the application of pesticides when persons other than pesticide applicators are present in the field;

§ 7.30—prescribes the periods of time (known as "re-entry intervals") during which workers may not enter the fields after treatment with various kinds of pesticides;

§ 7.31—establishes standards for determining specific re-entry intervals for workers.

Helle's initial point is that the district court erred in declaring that Tex.Agric. Code Ann. § 76.104 (1982) empowered the Department to promulgate the rules. Section 76.104(b) provides:

Rules adopted in this section may:

(1) prescribe methods to be used in the application of a restricted-use or state-limited-use pesticide;

(2) relate to the time, place, manner, method, amount or concentration of pesticide application or to the materials used in pesticide application; and

(3) restrict or prohibit use of a restricted-use or state-limited-use pesticide in designated areas during specific periods of time.

■ This Court has concluded that § 76.104(b)(2) authorizes the Department's rules. Section 76.104(b)(2), on its face, clothes the Department with broad authority to adopt rules "rela[ting] to . . . pesticide application. . . ." No limiting language is found in § (b)(2) and as such, it is more expansive than §§ (b)(1) or (b)(3). The latter subsections are restricted specifically to regulation of special categories of pesticide—restricted-use [1] and state-limited-use.[2] Furthermore, §§ (b)(1) and (b)(3) provide a narrow, special range of rulemaking responsibility. Subsection (b)(1) allows the agency only to "prescribe methods" for pesticide application, while § (b)(3) speaks only of restricting or prohibiting use of pesticides in the designated categories.

In contrast, § 76.104(b)(2) provides that rules promulgated thereunder need only "relate" to wide-ranging aspects of pesti-

---

**1.** Restricted-use pesticides are those which the Environmental Protection Agency ("EPA") has determined "may generally cause, without additional regulatory restrictions, unreasonable adverse effects on the environment. . . ." 7 U.S. C.A. § 136a (d)(1)(C) (1980).

**2.** State-limited-use pesticides are those determined by the Texas Department of Agriculture to require "additional restrictions to prevent unreasonable risk to man or the environment. . . ." Tex.Agric.Code Ann. § 76.003 (1982).

cide application in *general*, not solely to application of the restricted categories of pesticide. It appears plain that the words "restricted-use and state-limited-use" were purposefully omitted from § (b)(2), given the difference in breadth between the two subsections relating to restricted pesticides, and the subsection relating to "pesticide application" in general. Moreover, since § (b)(1) gives the agency power to prescribe "methods" for application of restricted pesticides, it would be redundant again to place the word "method" in § (b)(2), unless that section covered a different group of pesticides.

Helle suggests that the terms of Tex. Rev.Civ.Stat.Ann. art. 135b–5a § 16 (§ 76.104 before codification) demonstrate clearly an intent by the legislature to regulate only restricted-use and state-limited-use pesticides. Section 16 provided:

The head of each state agency with responsibility for certification of pesticide applicators, as provided in Section 15 of this Act, may after due notice and a public hearing, promulgate regulations to carry out the provisions of this Act for which he is responsible. The regulations may prescribe methods to be used in the application of restricted-use and state-limited-use pesticides. Regulations may relate to the time, place, manner, methods, and amounts and concentrations of pesticide application and to the materials used in pesticide application, and may restrict or prohibit use of restricted-use and state-limited-use pesticides in designated areas during specified periods of time. Regulations shall be promulgated only after consideration of precautions or restrictions necessary to prevent unreasonable adverse effects on the environment.

The contention is without merit as perusal of § 16 reveals no substantive differences from § 76.104.

■ Much of Helle's argument under this point of error is devoted to a discussion of his analysis of the legislative history of § 76.104. If a statute is plain and unambiguous, there is no need to resort to the rules of construction. *Ex Parte Roloff,*

510 S.W.2d 913 (Tex.1974); *Fox v. Burgess,* 157 Tex. 292, 302 S.W.2d 405 (1957). Because this Court is of the opinion that § 76.104(b)(2) is plain and unambiguous, the rules of construction advanced by Helle are inappropriate for our consideration.

By his second point of error, Helle contends that the district court erred in concluding that the Department "complied with all statutory and procedural requirements in adopting the rules and regulations in question." Helle first suggests that the rules are invalid because the Department failed to comply with § 76.104(c). Section 76.104(c) provides that:

A regulatory agency may adopt a rule under this section only after consideration of precautions or restrictions necessary to prevent unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of the pesticide.

Helle's primary argument is that the Department failed to properly "account [for] the economic, social, and environmental costs" involved. In particular, Helle claims that the Department promulgated the re-entry intervals in the absence of "hard" data, specific to each pesticide, showing that the risk imposed by a particular pesticide justified such a re-entry interval.

Section 76.104(c) provides no specific method by which the Department must weigh the competing considerations involved in pesticide regulation. The failure of the Department to generate its own pesticide-specific toxicity studies does not necessarily mean that the Department did not account for the danger to workers posed by the pesticide. Helle's attack, in this regard, appears more of a challenge to the *reasonableness* of the Department's *conclusions* and not so much to its method in coming to those conclusions.

■ There is proof indicating that the Department did account, in some manner, for the risks imposed by the various categories of pesticides. Both parties agree that the danger of "acute intoxication" through exposure to certain pesticides was

well documented, and the Department relied on this information in imposing a twenty-four hour re-entry interval on pesticides designated "Toxicity Category 1" by the EPA. § 7.30(c)(1). The Department also acknowledged that California and North Carolina had already imposed such an interval. In the case of the forty-eight hour re-entry interval, § 7.30(c)(2), some of the pesticides listed were already so restricted by the EPA, 40 C.F.R. § 170.3 (1986), and "most" of the others were similarly restricted in California. The Department looked to the treatment these pesticides received in California and in other states, as well as examining "illness information" and acute toxicity information.

The final category in dispute, a rebuttable twenty-four hour re-entry interval for all pesticides in use, was likewise not created in a vacuum. Rather than *acute* health risks, this category was designed especially to prevent *chronic* health risks. The Department resorted to general literature posing the danger of suspected adverse chronic health effects and more specific information concerning the possibility that chronic exposure to some of these untested pesticides could cause cancer. Accordingly, even in the absence of comprehensive specific toxicity data concerning chronic health effects, the Department did "account" for the dangers to health posed by the pesticides. Contrary to Helle's suggestion, the statute does not require that each pesticide be individually tested.

■ Helle further argues that there was "no meaningful assessment of economic costs" prior to the promulgation of the rules. There is proof, however, that the Department "accounted" for the economic costs and benefits of the rule. Department economist Heather Ball testified extensively to the procedures she followed in working up the economic costs to farmers of the prior notification, field posting, and protective clothing requirements imposed by the rules. Department counsel Sam Biscoe also testified that the Department considered the economic analysis provided by the farmers' economist, Karin Richmond. The Department's notice of proposed rule-

making, 9 Tex.Reg. 5468 (1984), lays out the results of Ball's work in the fiscal note portion of the notice. Richmond, representing the farmers' interest, agreed that Ball's work was accurate to the extent that it attempted to reflect state-wide average conditions. This Court is satisfied that the Department undertook an examination of economic cost/benefit. § 76.104(c).

Helle argues, finally, that the Department violated § 76.104(c) because that section allows only rules necessary "to prevent unreasonable risk to man ..." while Tex.Admin.Code § 7.31 requires re-entry intervals to "be set at a level adequate to protect human health and shall incorporate a reasonable margin of safety to ensure protection of human health." Appellant suggests that § 7.31 somehow sets a stricter standard than is allowed by § 76.104(c).

The Department responds, correctly, that Helle fails to articulate how the former is necessarily inconsistent with the latter. Furthermore, as the district court found, the two standards describe different things. The legislature did not require that the Department's rules incorporate the "unreasonable risk" standard or employ the "unreasonable risk" language. The determination to establish a re-entry interval of any length was based on its being found necessary to prevent an unreasonable risk to humans. Once such a determination was made, the appropriate length of the interval was set according to the § 7.31 standard of adequacy to provide a reasonable margin of safety to ensure human health.

Under point of error two, Helle next urges that the Department failed to comply with certain procedural rulemaking requirements imposed by APTRA. He makes a conclusory allegation that "no meaningful fiscal note was ever done." APTRA § 5(a)(4). Helle, however, has failed to brief this contention and, accordingly, the contention is waived. *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd.).

Helle also suggests that "[a]lthough public hearings were held, the hearings were meaningless since the department had al-

ready decided before any hearings were held, what the regulations would include." This manner of hearing, asserts Helle, violated his right to due process. Helle has not seen fit to provide any meaningful record references to support this argument. He cites several sections from the statement of facts which are irrelevant, and relies primarily for his contentions on the deposition of Ken Kadlec. Kadlec's deposition contains one hundred forty-two pages most of which was read into evidence. The district court, however, sustained objections to various questions and answers of the witness. Helle, nevertheless, simply refers this Court to the deposition, as a whole, and does not point out any specific testimony by page number upon which he is relying to support his argument.

Texas R.App.P.Ann. 74(f) (Supp.1987) provides, in part, that the brief shall include a fair, condensed statement of the facts pertinent to such points with reference to the pages in the record where the same may be found. One of the main purposes of Rule 74 is to require counsel to put before the appellate court in the brief at least the substance of the point relied upon for reversal and to relieve the appellate court from having to piece together a point for the appellant from an examination of the transcript and statement of facts. *Isenhower v. Bell*, 365 S.W.2d 354 (Tex. 1963). Rule 74(f) makes plain the duty of counsel to support the points of error with a fair and condensed statement of facts pertinent thereto "... *with references to the pages in the record where the same may be found....*" (Emphasis added). It is not the obligation of the appellate court to search through the statement of facts—in this instance one hundred forty-two pages of Kadlec's deposition—to discover the facts which might support Helle's point of error. *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197 (1955); *Hale v. Ramsey*, 524 S.W.2d 436 (Tex.Civ.App.1975, no writ). The complaint is waived.

By his fourth point of error, Helle claims that the "Department did not act on a sufficient factual basis in determining that the rules and regulations adopted by the Department are necessary." An examination of Helle's supporting authorities shows that he is relying upon appellate opinions which treat judicial review of contested cases and not those involving review of rulemaking proceedings. The thesis of the argument under the point seems to be that the Department's rules are not supported by "substantial evidence."

Helle's argument misses the point. The validity of a rule does not depend upon whether or not it is supported by "substantial evidence." More to the point, a rule is valid if it is constitutional, within the granted power, and promulgated pursuant to proper procedure. Davis, *Administrative Law* § 5.03 (3rd ed.1972); Shannon & Ewbank, *The Texas Administrative Procedure and Texas Register Act Since 1976— Selected Problems*, 33 Baylor L.Rev. 393, 426 (1981). Because Helle's argument is not addressed to a ground which may be reviewed by the courts, the point of error is overruled.

Finally, Helle suggests that the Department's regulations are unconstitutional. First, he claims that the rules are unconstitutionally vague. Helle supports his argument with a single sentence and a single authority. He does not show the Court which particular rule or parts thereof he deems unconstitutionally vague nor does he even suggest whether he places his reliance upon the Constitution of Texas or that of the United States. A contention so inadequately presented is waived. *Rayburn v. Giles, supra.*

Helle's second constitutional claim is that the Department's rules deny him equal protection. Without analysis or discussion, Helle simply asserts that the rules unreasonably discriminate against farmers like himself, a vegetable grower farming near an urban area who relies primarily on aerial application of pesticides. He does not suggest to this Court which, if any, of the rules at issue accomplish this result or how that result is accomplished. It is not the responsibility of the appellate court to pinpoint the issues, marshal the facts, and fashion the argument for an appealing par-

ty. *Isenhower v. Bell, supra.* The complaint is waived.

The judgment is affirmed.