Opinion filed January 31, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00033-CV
_____

**GALILEE PARTNERS, L.P., Appellant**
**V.**
**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,**
**Appellee**

**On Appeal from the 98th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-09-002265**

### M E M O R A N D U M   O P I N I O N

The Texas Commission on Environmental Quality (Commission) denied Galilee Partners, L.P.'s application for the creation of a water control and improvement district. On appeal, the district court affirmed the Commission's order, and this appeal followed. We affirm.

Galilee sought the Commission's approval of a plan to create the Maypearl Water Control and Improvement District No. 1 (District). Galilee filed its

application with the Commission in April 2005. The proposed purpose of the District was to furnish water as well as to provide for wastewater, drainage, and storm water control facilities to approximately 226 acres in Ellis County between Interstate 35 West and Interstate 35 East. According to the record, the land is located south of Midlothian (the evidence places the distance between the land and Midlothian at anywhere from eight to ten miles), northwest of Maypearl, and some five to six miles from Venus. Although rural, the property is located near a proposed highway construction project that was designed to connect the area with State Highway 360, a highway that runs to and from the DFW airport.

The waterworks improvements contemplated by the proposed application were to be constructed by the developer, and the District would ultimately reimburse the developer out of bond sales. The facilities were to be owned and operated by the District. Ultimately, the financing of the improvements were to be paid by the issuance of bonds that would be retired through the taxing power of the District.

The final plans called for 150 acres that were to be subdivided into 798 small "workforce [residential] housing" sites. Out of what remained of the 226 acres, the final plans were for ten acres to be set aside for a school site, thirteen acres for commercial development, and the remaining fifty-three acres for a flood plain, open spaces, and utility easements.

The concept for the development itself according to the original plan was to provide affordable workforce housing for the growing Dallas-Fort Worth metro-plex area. In order to achieve that result, approximately one-half of the lots were about 4,000 square feet, and the other lots were some 5,000 square feet in size. One of the intended effects of the small lot concept was to avoid higher building costs resulting from larger lot sizes necessitated by various zoning and planning

requirements in other areas and thereby make the properties in this development more affordable.

The Ellis Prairie Soil and Water Conservation District filed a protest to the application as did Ellis County. The case made its way to the State Office of Administrative Hearings for a contested case hearing. The Administrative Law Judge (ALJ) assigned to the case conducted that hearing. After the record closed, the ALJ issued her "PROPOSAL FOR DECISION." The ALJ recommended that the Commission deny the application. Ultimately, by a vote of two to one, the Commission denied the application. Galilee appealed the denial to the district court. The district court affirmed the Commission's order.

Galilee presents us with five issues on appeal. Issues I, II, and III are basically grounded on the same premise: the Commission has no authority to deny an application for a water improvement district based on a finding that a proposed district is not immediately financially feasible or that the property covered by the proposed district is not marketable as proposed. According to Galilee, such newfound authority as applied in this case had never been used by the Commission before except as a bright-line rule in the early stages of the Commission's consideration of an application and would grant to the Commission the ability to control location, size, and contested marketability of proposed developments. On the other hand, the Commission argues that this rule is not a new one and is specifically authorized. As far as we can tell, the question before us is unique and is a case of first impression. A resolution of this inquiry will provide the resolution to the first three issues on appeal. After we resolve that inquiry, we will take up the remaining two issues.

The authority granted to the Commission, insofar as this appeal is concerned, is first found in the Texas Constitution, article XVI, section 59. TEX.

CONST. art. XVI, § 59.  Pursuant to that authority, the legislature made provision for the filing of a petition/application for the creation of a water control improvement district:

§ 51.014. Contents of Petition

The petition shall include:

(1) the name of the district;

(2) the area and boundaries of the district;

(3) the provision of the Texas Constitution under which the district is to be organized;

(4) the purpose or purposes of the district;

(5) a statement of the general nature of the work to be done and the necessity and feasibility of the project, with reasonable detail and definiteness to assist the court or commission passing on the petition in understanding the purpose, utility, feasibility, and need; and

(6) a statement of the estimated cost of the project based on the information available to the person filing the petition at the time of filing.

TEX. WATER CODE ANN. § 51.014 (West 2008).  The Texas Administrative Code also sets forth requirements for an application such as the one involved in this appeal.  One such requirement is that the application must contain, if substantial development is proposed, a market study and a developer's financial statement.  30 TEX. ADMIN. CODE § 293.11(a)(6) (Tex. Comm'n on Envtl. Quality, Information Required to Accompany Applications for Creation of Districts).

If a contested case hearing is conducted, as in this case, after the hearing:

(a) The commissioners court or the commission shall grant the petition requesting the creation of a district if it appears at the hearing that:

(1) organization of the district as requested is feasible and practicable;

(2) the land to be included and the residents of the proposed district will be benefited by the creation of the district;

(3) there is a public necessity or need for the district; and

(4) the creation of the district would further the public welfare.

(b) If the commissioners court or the commission fails to make the findings required by Subsection (a) of this section, it shall refuse to grant the petition.

(c) If the commissioners court or the commission finds that any of the land sought to be included in the proposed district will not be benefited by inclusion in the district, it may exclude those lands not to be benefited and shall redefine the boundaries of the proposed district to include only the land that will receive benefits from the district.

TEX. WATER CODE ANN. § 51.021 (West 2008).

When we construe these statutory provisions, we ascertain and give effect to the intent of the legislature as expressed in the statutes. *In re A.A.G.*, 303 S.W.3d 739, 740 (Tex. App.—Waco 2009, no pet.). We will presume that every word of the statutes has a purpose. *Id.* A governmental agency's construction of a statute that it is charged to carry out or to enforce is afforded due consideration if the construction is a reasonable one. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe*

*Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). If the agency's construction of the statute is a reasonable one and in accord with the plain language of the statutes, then it is entitled to judicial deference. *Id.* at 628.

As we have said, the ALJ heard this case and proposed that the Commission deny the application. Although the executive director of the Commission had originally recommended that the Commission approve the District, by the time of the hearing, he had withdrawn that recommendation and recommended that the application be denied. The executive director based his change in recommendation upon the collapse of the subprime mortgage industry and the concomitant housing bust that occurred after Galilee filed its application but before the hearing. All parties agree that the collapse and bust did occur at that time.

The Commission ultimately denied the application by a vote of two to one. The Commission issued its findings of fact and conclusions of law. Among many other things, it found (1) that Galilee had failed to meet its burden to prove that there was a need for the District and (2) that the District was not economically feasible "because [Galilee] did not establish that there is a need for the proposed development." The Commission reasoned that, "[w]ithout the need for the proposed development, there is no need for utility services, no need for a governing body, and no need for the District."

As we apply the applicable constitutional and statutory provisions to this case, we believe that it is important for us to note what the Commission did and did not find and conclude as compared to the argument advanced by Galilee. In its first issue, Galilee claims that it was error to erroneously equate the organizational feasibility of and need for the District with the perceived immediate financial feasibility and marketability of the development. Galilee argues that the Commission's decision was based upon the collapsed real estate market that prevailed

at the time of the hearing.  Galilee argues that a district's organizational feasibility and need should not be equated with the immediate real estate market feasibility or necessity for the proposed housing development.

We take Galilee's position to be that the market feasibility and need for the real estate development is an issue separate and apart from that of the feasibility and need for the District itself.  In its brief, Galilee argues that for the Commission to base its decision upon the former would be for the Commission to exceed the bounds of its statutory authority, to violate rules of statutory construction, and to retroactively apply a new ad hoc standard to the application process.  Galilee assails the Commission for denying the application based upon the assumed fact that "the proposed real estate development was not shown to be immediately financially viable or needed."

We disagree that the Commission found that the "proposed real estate development was not shown to be immediately financially viable"; we do not believe that to be an accurate statement of what the Commission actually did. Whether the development was "immediately financially viable" was not a stated consideration of the Commission.  The Commission concluded that "the proposed District," not the proposed development, "is not economically feasible in accordance with § 51.021(a)(1) of the Water Code."  The Commission further concluded that "there is not a public necessity or need for the proposed District as required by § 51.021(a)(3) of the Water Code."  The Commission made its finding clear: "Without the need for the proposed development, there is no need for utility services, no need for a governing body, and no need for the District."

With the possible exception of two witnesses for Galilee—both home builders—no witness, even those presented by Galilee, said that there was a current market for housing in the proposed development.  One of those two witnesses was

an investor in Galilee. The proof was divergent on just when, if ever, there would be a market for housing within the proposed development. We are to concern ourselves with the reasonableness of the administrative order, not the correctness of the order, and we may not substitute our judgment as to the weight of the evidence for that of the Commission. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994).

Galilee argues that the Commission has never taken such action as this before it denied the application in this case. Whether that be the case or not, we believe that the statutes not only authorize the Commission to determine whether there is a public necessity or need for a district, but also require it to make such a determination. Otherwise, we fail to see why the statutes would require (1) that the application include "a statement of the general nature of the work to be done and the necessity and feasibility of the project, with reasonable detail and definiteness to assist the court or commission passing on the petition in understanding the purpose, utility, feasibility, and need" for the project; and (2) that the application include a market study and a developer's financial statement. *See* WATER § 51.014; 30 ADMIN. § 293.11(a)(6).

The Commission did not determine whether the development would be a moneymaker—a financially sound investment—but it did determine that there was no need for it based upon testimony from all parties showing that, by the time of the hearing, the subprime mortgage crisis and the housing bust had hit the area and there was no market for the property in the proposed development. Again, to paraphrase the Commission, because there was no market for the property contemplated by the development, there was no need for utility services and, therefore, no need for a governing body and, therefore, no need for the District.

Assuming that the findings of the Commission were supported by substantial evidence, we hold that the trial court did not err when it affirmed the Commission's denial of the application based upon its belief that "the proposed District is not economically feasible in accordance with § 51.021(a)(1) of the Water Code"; that "there is not a public necessity or need for the proposed District as required by § 51.021(a)(3) of the Water Code"; and that, "[w]ithout the need for the proposed development, there is no need for utility services, no need for a governing body, and no need for the District." Galilee's Issues I, II, and III are overruled.

In its Issue IV, Galilee argues:

> The Trial Court erred in affirming the TCEQ's reliance upon non-probative, unqualified, speculative and improperly admitted opinion evidence as to the financial feasibility of and need for the workforce housing development to be served by the proposed district and the testimony of the County and Soil and Water Conservation District whose[] expert witnesses were not even disclosed until after the deadline established for both disclosure and the taking of depositions in violation of both the Texas Rules of Evidence and Rules of Civil Procedure. The allowance of such testimony over Applicant's objections renders the Order unsupported by substantial evidence and made under unlawful procedure.

We frame what we perceive to be contained within Galilee's Issue IV to encompass assertions that the evidence upon which the Commission relied was non-probative, given by unqualified witnesses, speculative, and improperly admitted. Galilee further asserts that the Commission should not have relied, and the district court should not have affirmed that reliance, upon the testimony of expert witnesses called by Ellis County and by Ellis Prairie Soil and Water Conservation District who were not disclosed until after the deadline previously established for disclosure and depositions.

9

The Commission argues that Galilee has failed to adequately brief Issue IV and has therefore waived the objections. We agree. In its brief, Galilee stated that it "consistently objected to the presentation of evidence by the County and the Soil and Water Conservation District and the reversal of testimony of the Commission's Staff witness presented at the evidentiary hearing as unsupportable under the reliability requirements for expert testimony." Galilee then stated that "[t]hese objections are set forth in the record in both written and verbal form." Galilee inserted a footnote here, in which it stated: "RR Vol. 7, Applicant's Objections to Ellis County Witness's Pre-filed Testimony; Applicant's Objections to EPSWCD pre-filed Testimony; and Applicant's Objections to the Testimony of Executive Director Witness Prabin Basnet." Galilee then "incorporates herein by reference all of its record objections to the testimony of the other parties and to the presentations of party witnesses not even designated prior to the disclosure and deposition deadlines imposed by SOAH in this proceeding," and it refers to the above-quoted footnote again.

When we examine the record to which Galilee sends us, we find well over 100 objections that Galilee lodged to the testimony of various witnesses. We do not feel constrained to search through those objections to find which of them are the subject of Galilee's complaints in this appeal. We also do not feel constrained to find those objections and then to evaluate each unspecified objection and then to determine not only how such ruling was incorrect but also how the ruling was made arbitrarily or unreasonably and thus constituted an abuse of discretion. *See Tex. Dep't of Pub. Safety v. Nordin*, 971 S.W.2d 90, 93 (Tex. App.—Houston [14th Dist.] 1998, no pet.). As the Commission notes in its brief, the Austin Court of Appeals has written, "It is not the responsibility of the appellate court to pinpoint the issues, marshal the facts, and fashion the argument for an appealing

10

party." *Helle v. Hightower*, 735 S.W.2d 650, 654 (Tex. App.—Austin 1987, writ denied); *see* TEX. R. APP. P. 38.1, 38.9. We overrule Issue IV.

In Issue V, Galilee argues that we should find reversible error in the trial court's approval of the Commission's failure to make any findings in relation to public welfare. The Commission did not base its decision upon the public welfare issue but, instead, upon Galilee's failure to meet other criteria; the Commission need not make unnecessary findings. *See Pedernales Elec. Coop., Inc. v. Pub. Util. Comm'n of Tex.*, 809 S.W.2d 332, 337 (Tex. App.—Austin 1991, no writ) (not required to state facts upon which it did not rely). Issue V is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

January 31, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.