ACCEPTED
01-15-00378-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 3:40:21 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00378-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 3:40:21 PM
CHRISTOPHER A. PRINE
~~Clerk~~

AC INTERESTS, L.P., FORMERLY AMERICAN COATINGS, L.P.,

*Appellant,*

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Appellee.*

On Appeal from the 53rd Judicial District,
Travis County, Texas, Cause No. D-1-GN-14-005160

## BRIEF OF APPELLEE,
## TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

JON NIERMANN
Chief, Environmental Protection
Division

CYNTHIA WOELK
Assistant Attorney General
State Bar No. 21836525

Environmental Protection Division
P. O. Box 12548
Austin, TX 78711-2548
Tel: (512) 475-4013
Fax: (512) 320-0052ATTORNEYS
FOR APPELLANT
TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

July 9, 2015

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    The Third Court of Appeals has already decided this issue: service
        requirements like this one are mandatory. . . . . . . . . . . . . . . . . . . . . 9

    B.    The 30-day requirement in the Clean Air Act controlled. . . . . . . . . 12

    C.    The legislature did not override the Clean Air Act's 30-day service
        requirement by amending the Water Code. . . . . . . . . . . . . . . . . . . 14

    D.    It does not matter if AC Interests promptly gave someone at the
        Commission a copy of the Original Petition. . . . . . . . . . . . . . . . . . 15

    E.    Clean Air Act § 382.032(c) does not include a good-and-
        sufficient-cause-for-delay or due diligence exception to the 30-day
        requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

F.     There is no undue harm exception to the 30-day service requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

G.     AC Interests claims but does not show it has a vested property right in the Emission Reduction Credits that it seeks. . . . . . . . . . . . 18

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

**Cases**                                                                                          **Page**

*Atty. Gen. of Tex. v. Farmers Ins. Exchange,*
    411 S.W.3d 139 (Tex. App.—Austin 2013, no pet.) . . . . . . . . . . . . . . . . . 14

*Balistreri-Amrhein v. AHI,*
    No. 05-09-01377-CV, 2012 WL 3100775
    (Tex. App.—Dallas July 31, 2012, pet. denied) (mem. op.) . . . . . . . . . . . 18

*Bragg v. Edwards Aquifer Auth.,*
    71 S.W.3d 729 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Curry v. Heard,*
    819 F.2d 130 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Fireman's Fund County Mut. Ins. Co. v. Hidi,*
    13 S.W.3d 767 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fleming Foods of Tex. v. Rylander,*
    6 S.W.3d 278 (Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hallco Texas, Inc. v. McMullen County,*
    1997 WL 184719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Helle v. Hightower,*
    735 S.W.2d 650 (Tex. App.—Austin 1987, writ denied) . . . . . . . . . . . . . 18

*Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality,*
    393 S.W.3d 417 (Tex. App.—Austin 2012, pet. denied) . . . . . . . . . . . . . . 7

*Hooks v. Dep't of Water Res.,*
    611 S.W.2d 417, 419 (Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Horizon/CMS Healthcare Corp. v. Auld,*
    34 S.W.3d 887, 901 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Cases** (cont'd)                                                        **Page**

*MCI Sales & Serv., Inc. v. Hinton,*
     329 S.W.3d 475 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*N.E. Neighbors Coal. v. Tex. Comm'n on Envt'l Quality,*
     No. 03-11-00277-CV, 2013 WL 1315078
     Tex. App.—Austin Mar. 28, 2013, pet. denied) . . . . . . . . . . . . . . . . . . . . 11

*State v. Colyandro,*
     233 S.W.3d 870 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stephenson v. Corporate Servs. Inc.,*
     650 S.W.2d 181 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) . . . . . . . . . . . 16

*Taylor v. Meador,*
     326 S.W.3d 682 (Tex. App.—El Paso 2010, no pet.) . . . . . . . . . . . . . . . 18

*Tex. Comm'n on Envt'l Quality v. Kelsoe,*
     286 S.W.2d 91 (Tex. App.—Austin 2009, pet. denied) . . . . . . . . . . . . . . 19

*Tex. Natural Res. Conserv. Comm'n v. Sierra Club,*
     70 S.W.3d 809 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

*TJFA, L.P. v. Tex. Comm'n on Envtl. Quality,*
     368 S.W.3d 727 (Tex. App.—Austin 2012, pet. denied)  9, 10, 11, 15, 16, 17

*USA Waste Servs. of Houston, Inc. v. Strayhorn,*
     150 S.W.3d 491 (Tex. App.—Austin 2004, pet. denied) . . . . . . . . . . . . . . 7

**<u>Texas Statutes</u>** **<u>Page</u>**

Tex. Gov't Code

§ 311.021(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Tex. Health & Safety Code (Solid Waste Disposal Act)

§ 361.321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 361.321(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15

Tex. Health & Safety Code (Clean Air Act)

§§ 382.001-.510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

§ 382.002(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§§ 382.011-.012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 382.017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 382.032 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 8, 12, 13

§ 382.032(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 382.032(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 8, 11, *passim*

Tex. Water Code

§ 5.351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

§ 5.353 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 13

**<u>Rules</u>**

30 Tex. Admin. Code

§§ 101.300-.304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ch. 101, Subchapter H . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

§ 101.302(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

§ 101.303(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 101.306(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§ 305.66 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 305.122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. R. App. P.

38.1(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. R. Civ. P.

91a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other**                                                           **Page**

Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1,
1989 Tex. Gen. Laws 2230, 2722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Act of May 30, 1993, 73rd Leg., R.S., ch. 485, § 5,
1993 Tex. Gen. Laws 1887, 1887 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 11.155,
1995 Tex. Gen. Laws 458, 727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 Tex. Reg. 313 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATEMENT OF THE CASE

AC Interests, L.P. (AC Interests) filed an application with the Texas Commission on Environmental Quality (Commission or TCEQ) for certification of air-emission reduction credits. By letter dated November 19, 2014, the Commission denied the application. AC Interests filed suit against the Commission to challenge the agency's decision. When AC Interests failed to serve the Commission with citation within 30 days after the date on which its petition was filed in district court, the Commission filed a Rule 91a motion to dismiss,[1] citing Health & Safety Code § 382.032(c), part of the Texas Clean Air Act (the Clean Air Act or the Act).[2] The district court granted the Commission's motion and entered an Order of Dismissal, dismissing the case in its entirety.[3] AC Interests filed this appeal.

The case was transferred to this Court by a docket equalization order of the Supreme Court.

---

[1] CR 26-29 (Rule 91a Motion). References to the Clerk's record in this case will be by the abbreviation CR followed by a page number or numbers and sometimes line numbers on a page.

[2] The Clean Air Act is at Tex. Health & Safety Code §§ 382.001 - .510. Hereafter, sections in the Act will be cited using the shorthand Clean Air Act § ___ rather than Health & Safety Code § ___.

[3] CR 77 (District Court's Order of Dismissal) (a copy is in Appendix 1).

## STATEMENT REGARDING ORAL ARGUMENT

After AC Interests filed its brief on May 19, 2015, the Clerk of the Court sent notice to the parties that oral argument had been waived. The Commission does not request oral argument because the decisional process would not be significantly aided by it. In the event the Court were to set oral argument, the Commission asks to be heard.

## ISSUE PRESENTED FOR REVIEW

Clean Air Act § 382.032 waives sovereign immunity for suits that challenge Commission decisions made under the Clean Air Act and rules promulgated to implement the Act. In such suits, subsection 382.032(c) requires that service of citation on the Commission be accomplished within 30 days after the date the petition is filed. Since AC Interests did not serve citation on the Commission within 30 days, was the district court correct to dismiss the suit?

**STATEMENT OF FACTS**

The Commission is charged with administering the Texas Clean Air Act. Clean Air Act § 382.011.[4] The Act establishes a regulatory scheme to safeguard the state's air resources from pollution. *Id*. at § 382.002(a). Under it, the Commission is directed to regulate by controlling or abating air pollution and emissions of air contaminants. As part of its implementation of the Act, the Commission adopted rules establishing an emissions banking and trading program.[5] The rules, set out in 30 Texas Administrative Code Chapter 101, Subchapter H, authorize the Commission to grant Emission Reduction Credits (ERCs) under the emissions banking and trading program if certain authorized emissions are reduced or eliminated. ERCs may be generated by a company, for example, by permanently shutting down a facility that lawfully emits volatile organic compounds or oxides of nitrogen. 30 Tex. Admin. Code § 101.303(a)(1)(A). An ERC created under the agency's rules "is a limited authorization to emit [] pollutants . . . ." 30 Tex. Admin. Code § 101.302(i). If

---

[4] Copies of all statutes relied on in this brief are in Appendix 2. Copies of agency rules relied on are in Appendix 3. This brief specifically cites three rules from 30 Texas Administrative Code Chapter 101, Subchapter H. Although there were very recent amendments to some parts of those rules, the Appendix includes only the current versions of those rules since any amendments were non-substantive or didn't affect the rules for the purposes for which they are cited in this brief.

[5] *See*, *e.g*., 26 Tex. Reg. 313 (2001) (preamble to adoption of 30 Tex. Admin. Code §§ 101.300-.304 showing the rules were adopted to implement the Commission's authority in Clean Air Act §§ 382.011- .012; 382.017).

certified by the Commission, the company may trade or use its ERCs within a designated area. One example of an allowable use of ERCs is to offset emissions from a new source of emissions. 30 Tex. Admin. Code § 101.306(a)(1).

In 2013, AC Interests filed an application with the Commission for certification of ERCs.[6] The Executive Director reviewed the application and denied it.[7] AC Interests filed this suit on December 10, 2014,[8] to challenge the agency's decision; the company alleged that the Commission had violated rules in 30 Texas Administrative Code Chapter 101, Subchapter H.[9] AC Interests apparently sought to invoke both the Clean Air Act and the Water Code as waivers of sovereign immunity and jurisdictional bases for its suit, saying:

> Plaintiff seeks judicial review of the final decision by TCEQ in this matter pursuant to the Texas Commission on Environmental Quality. TEX. WATER CODE § 5.351 and Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032(a).[10]

After more than 30 days had passed after the suit was filed, the Commission filed a timely motion pursuant to Texas Rule of Civil Procedure 91a asking the

---

[6] CR 1, 2.

[7] CR 1, 2.

[8] CR 3.

[9] *See, e.g.*, CR 8, 18.

[10] CR 2, lns. 16-19 (Plaintiff's Original Petition); *See also*, CR 3, lns. 13-16.

district court to dismiss AC Interest's suit for failure to serve the Commission with citation within 30 days after the suit was filed. Although the Water Code arguably allows for service of citation to be accomplished within one year,[11] the Clean Air Act has an express deadline of 30 days. The Commission asserted that the 30-day deadline in Clean Air Act § 382.032(c) applied because the cause of action arose from the Commission's actions under the Clean Air Act.

After the Commission filed its Rule 91a motion, AC Interests requested issuance of citation.[12] On February 6, 2015—the 58th day after AC Interests filed its petition—citation was served on the Commission.[13]

The district court granted the Commission's motion and entered an Order of Dismissal. AC Interests appeals.

## SUMMARY OF THE ARGUMENT

AC Interests filed a suit complaining about a decision made by the Commission under its authority in the Clean Air Act and its rules implementing that Act.

In Clean Air Act § 382.032, the Legislature waived the Commission's

---

[11] *See* Tex. Water Code § 5.353 ("If the plaintiff does not secure proper service of process or does not prosecute his suit within one year after it is filed, the court shall presume that the suit has been abandoned.").

[12] CR 37.

[13] CR 78.

6

immunity from suits like this arising under the Act. However, the Legislature provided that service of citation in such suits must be executed within 30 days after the date on which the petition is filed. Under clear precedent from the Austin Court of Appeals, service requirements like this one are mandatory, and a case must be dismissed for non-compliance.

It is undisputed that AC Interests did not execute service of citation on the Commission within 30 days. The district court was correct to dismiss the suit because the deadline for service of citation is mandatory. The district court's Order of Dismissal should be affirmed.

## STANDARD OF REVIEW

The issues asserted by AC Interests involve statutory construction, which is a legal question that a court reviews de novo. *See MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 501 n.30 (Tex. 2010); *Bragg v. Edwards Aquifer Auth*., 71 S.W.3d 729, 734 (Tex. 2002); *USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied). In construing a statute, a court must ascertain the legislature's intent in enacting the statute. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417 at 424-25 (Tex. App.—Austin 2012, pet. denied). To determine the legislature's intent, courts should

7

look to the plain meaning of the words used in the statute. *See Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000).

## ARGUMENT AND AUTHORITIES

The Commission has sovereign immunity from suit. Clean Air Act § 382.032 waives the Commission's immunity for certain suits brought by persons challenging a Commission decision arising under the Clean Air Act. The suit must be filed in Travis County district court, and it must be filed within 30 days after the effective date of the challenged decision. Clean Air Act § 382.032(b). Citation must be served on the Commission within 30 days after the date on which the petition is filed. Clean Air Act § 382.032(c). Although AC Interests's petition cited both the Clean Air Act's own waiver of sovereign immunity and the Water Code's general waiver of sovereign immunity, it is undisputed that the *issues* raised by AC Interests in its petition arise under the Clean Air Act and rules promulgated by the Commission to implement its authority under that Act.[14]

AC Interests filed its Original Petition in this suit on December 10, 2014.[15] It waited until February 5, 2015 (a few days after the Commission had filed its Rule 91a

---

[14] *See, e.g.,* CR 1 ("This lawsuit arises out of a decision by TCEQ to deny Plaintiff's application for certification of emission credits.") (Plaintiff's Original Petition); CR 38 (same) (Plaintiff's response to Commission's Rule 91a motion).

[15] CR 3.

8

Motion) to *request* service of citation.[16]  Citation was served the following day—the 58th day after the petition was filed.[17]  Thus, the record shows—and it is undisputed—that AC Interests did not execute service of citation within 30 days after the date on which the petition was filed.

**A.  The Third Court of Appeals has already decided this issue: service requirements like this one are mandatory.**

The Commission has regulatory authority over many aspects of air, water, and waste.  However, the issues in the case pleaded by AC Interests clearly arose from the Commission's exercise of its authority under the Clean Air Act and rules promulgated to implement that authority.  The Clean Air Act waives sovereign immunity for suits arising under the Act and rules promulgated to implement it.  It includes a mandatory 30-day service of citation requirement with which AC Interests failed to comply.  Therefore, it was proper for the district court to dismiss AC Interest's suit.

In a case that is directly on point, the Austin Court of Appeals held that a nearly identical provision in the Solid Waste Disposal Act "imposed an absolute deadline that a party must comply with in order to maintain his suit."  *TJFA, L.P. v. Tex. Comm'n on Envtl. Quality*, 368 S.W.3d 727, 734 n.5 (Tex. App.—Austin 2012,

---

[16]  CR 37.

[17]  CR 78.

9

pet. denied) (en banc) *(TJFA)*. Much of the Commission's authority over solid waste is set out in Chapter 361 of the Health & Safety Code. Like the Clean Air Act, the Solid Waste Disposal Act has its own waiver of sovereign immunity in Health & Safety Code § 361.321.[18] It says, "Service of citation must be accomplished not later than the 30th day after the date on which the petition is filed." Solid Waste Disposal Act § 361.321(c). The Third Court of Appeals interpreted that provision in *TJFA*. When plaintiff TJFA did not execute service of citation until 41 days after it filed suit (although it had given the Commission a copy of the petition on the day it filed suit), the Commission filed a motion to dismiss and a plea to the jurisdiction. The district court dismissed the suit. On appeal, TJFA argued that the 30-day service of citation requirement in § 361.321(c) "is merely directory and that its failure to comply with the requirement should be excused because it diligently attempted to execute service." *TJFA* at 730. The Third Court of Appeals rejected the argument holding that the service of process requirement, while not jurisdictional, was mandatory. *Id*. at 737-38. "By providing an explicit deadline, the legislature has indicated its intention to foreclose the possibility of excusing delays between filing and executing service due

_____

[18] Hereafter, sections in the Solid Waste Disposal Act will usually be cited as Solid Waste Disposal Act § ___ rather than as Health & Safety Code § ___.

10

to diligent efforts at service undertaken by plaintiffs." *Id*. at 735.[19]

As shown in the table immediately below, the Solid Waste Disposal Act language at issue in *TJFA* is nearly identical to the Clean Air Act language at issue in the case at bar.

| Solid Waste Disposal Act § 361.321(c) | Clean Air Act § 382.032(c) |
| --- | --- |
| Service of citation must be accomplished not later than the 30th day after the date on which the petition is filed. | Service of citation on the commission must be accomplished within 30 days after the date on which the petition is filed. |

Although aware of *TJFA* because the Commission cited it in its Rule 91a Motion below,[20] AC Interests makes no effort to distinguish or explain it in its brief—perhaps because the language of the two provisions is so similar that no reasonable distinction can be made. Because the language in the two provisions (both of which are in the Health and Safety Code) is nearly identical, the Third Court of Appeals' ruling in *TJFA* controls. And the district court was right to dismiss this case because AC Interests failed to comply with a mandatory requirement.

---

[19] In a subsequent case, the Austin Court of Appeals characterized the service-of-citation deadlines as "statutory service requirements for government defendants that result in *mandatory dismissal* if not met." *N.E. Neighbors Coal. v. Tex. Comm'n on Envtl. Quality*, No. 03-11-00277-CV, 2013 WL 1315078, *5 (Tex. App.—Austin Mar 28, 2013, pet denied) (emphasis added).

[20] CR 27.

**B.** **The 30-day requirement in the Clean Air Act controlled.**

AC Interests contends that Water Code § 5.353's service of citation provision controls here over the Clean Air Act's requirement. It bases that assertion on the fact that it mentioned Water Code §5.351 in its petition (alongside Clean Air Act § 382.032)[21] and the belief that the Water Code's service of citation provision was enacted more recently and supposedly better expresses the legislature's intent.

Although Water Code § 5.351 authorizes suits against the Commission, it says nothing specific about suits arising under the Clean Air Act or rules promulgated pursuant thereto. The Clean Air Act, which is the relevant enabling act because (directly and through rules adopted to implement it) it authorizes persons to file applications for Emission Reduction Credits and for the Commission to grant or deny those applications, also authorizes suits against the Commission. Because the Clean Air Act is the relevant enabling act and has its own waiver of sovereign immunity that authorizes suits such as this, the Court should conclude that the Water Code is not the applicable waiver of immunity for suits concerning actions taken by the Commission under the Clean Air Act or rules promulgated to implement that act. The waiver that is specific to actions under the Clean Air Act controls over a general waiver in the

---

[21] Appellant's Brief at 5 ("The Texas Water Code should be controlling because the original petition said this suit was being filed under [Water Code § 5.351].").

Water Code. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000) (noting traditional statutory-construction principle that more specific statute controls over more general statute).

Assuming arguendo that both Water Code § 5.351 and Clean Air Act § 382.032 waive sovereign immunity for this suit, then their very different service of process provisions in Water Code § 5.353 and Clean Air Act § 382.032(c) should be read together to give effect to both, if possible. *See Hooks v. Dep't of Water Res.*, 611 S.W.2d 417, 419 (Tex. 1981) (judicial review provisions of the Administrative Procedure and Texas Register Act and the Water Code should be read in harmony with one another). The only way to harmonize and give effect to both provisions—one arguably having an up-to-one-year deadline and the other having an express 30-day deadline—would be to require service within 30 days. However, if the statutes conflict and cannot be harmonized so as to give effect to both, then the enabling act—the Clean Air Act—controls because "[a]n agency's enabling legislation determines the proper procedures for obtaining judicial review of an agency decision." *Tex. Natural Res. Conserv. Comm'n v. Sierra Club*, 70 S.W.3d 809, 811 (Tex. 2002).

**C.** **The legislature did not override the Clean Air Act's 30-day service requirement by amending the Water Code**.

AC Interests makes a puzzling legislative history argument, apparently contending that the legislature's act of removing the 30-day service of citation requirement from the Water Code shows that the legislature believed the requirement should no longer apply to cases arising under the Clean Air Act.[22] The fact that the Water Code once had a 30-day service requirement that the legislature eliminated in 1971 does not reasonably suggest that the legislature meant to eliminate or override the express requirement in Clean Air Act § 382.032(c).

As discussed above in the Standard of Review section of this brief, courts look to the plain meaning of the words used in the statute. When a statute's language is clear and unambiguous, it is inappropriate to resort to extrinsic aids such as legislative history to construe the language. *See Atty. Gen. of Tex. v. Farmers Ins. Exchange*, 411 S.W.3d 139, 145 (Tex. App.—Austin 2013, no pet.) (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011)). However, in addition to the plain words of Clean Air Act § 382.032(c) that show the legislature's intent that service of citation had to be accomplished within 30 days, the legislative history shows that the legislature has amended the Clean Air Act three times since the Water Code's 30-day

---

[22] Appellant's Brief at 2-4.

service requirement was eliminated in 1971, and it has not seen fit to eliminate the Clean Air Act's 30-day service requirement.[23] Its intent to retain the requirement is thus quite clear.[24]

## D. It does not matter if AC Interests promptly gave someone at the Commission a copy of the Original Petition.

AC Interests says it gave someone at the Commission (a very large government agency) a copy of its Original Petition shortly after the suit was filed. On that basis, AC Interests attempts to excuse its failure to comply with the 30-day service of process requirement, arguing that the Commission "had constructive knowledge that a suit had been filed" two days after the suit was filed.[25] Even if that were the case, constructive knowledge is not enough. Service of citation is a term of art that describes the formal process by which a party is informed that it has been sued. *Tex.*

---

[23] Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2722, *amended by* Act of May 30, 1993, 73rd Leg., R.S., ch. 485, § 5, 1993 Tex. Gen. Laws 1887, 1887 and Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 11.155, 1995 Tex. Gen. Laws 458, 727.

[24] Moreover, after the Austin Court of Appeal ruled in *TJFA* in 2012 that the 30-day service of process requirement in Solid Waste Disposal Act § 361.321(c) is mandatory, the legislature did not see fit to repeal or amend the requirement. Courts have long recognized that silence or inaction by the legislature after a judicial interpretation "implies that the Legislature has approved of the interpretation. '[W]e presume the legislature intends the same construction to continue'" when it meets but does not overturn the construction. *State v. Colyandro*, 233 S.W.3d 870, 877-78 (Tex. Crim. App. 2007). Thus, there is every reason to think that the legislature is satisfied with the court's interpretation that the 30-day service of process in the Solid Waste Disposal Act—and by extension the nearly identical one in the Clean Air Act—was intended to be mandatory.

[25] Appellant's Brief at 5.

15

*Natural Res. Conservation Comm'n v. Sierra  Club*, 70 S.W.3d at 814 (citing *Stephenson v. Corporate Servs. Inc.*, 650 S.W.2d 181, 184 (Tex. App.—Tyler 1983, writ ref'd n.r.e.)).  Citation is more formal than notice; the former is directed to the defendant, tells the defendant that he has been sued, and commands the defendant to appear and answer. *Tex. Natural Res. Conservation Comm'n v. Sierra  Club* 70 S.W. 3d at 813-14.  Having constructive knowledge is not a substitute for service of citation. *TJFA, L.P. v. Tex. Comm'n on Envtl. Quality*, 368 S.W.3d 727 at 736, n.5 (giving the Commission or one of its employees a copy of petition is not equivalent to executing service and does not comply with statutory requirement to serve citation within 30 days).

**E.     Clean Air Act § 382.032(c) does not include a good-and-sufficient-cause-for-delay or due diligence exception to the 30-day requirement**.

AC Interests claims that its failure to serve citation should be excused because it had "good and sufficient cause for delay" and "used due diligence."[26]  These same sorts of arguments were made by the losing party in *TJFA, L.P. v. Tex. Commission on Environmental Quality* and rejected by the Third Court of Appeals, saying:

> [T]he legislature's decision to provide an explicit deadline by which service of citation must be executed foreclosed due-diligence considerations and instead imposed an absolute deadline that a party must comply with in order to maintain his suit.

---

[26]  Appellant's Brief at 3, 8-9.

*Id.* at 735, n.5. TJFA argued in favor of a good cause for delay exception to the Solid Waste Disposal Act's 30-day deadline but the court of appeals rejected it saying, "[T]he governing statute provides no option for extending the deadline or for excusing a failure to comply . . . ." *Id.* at 736-37. And due diligence is the standard that would apply if there were no deadline. Thus, AC Interests' argument invites the Court to ignore the statutory deadline, thus rendering the statute superfluous (contrary to the Code Construction Act's presumption that all of a statute is intended to be effective).[27] In any event, AC Interests did not demonstrate good cause or due diligence related to its failure to comply with the deadline.

**F.    There is no undue harm exception to the 30-day service requirement**.

AC Interests seems to argue for the Court to balance its harm (which it says is substantial) against the Commission's harm (which it says is nothing because the Commission had "constructive notice of the suit.")[28]

AC Interests, citing the federal case *Curry v. Heard*, 819 F.2d 130 (5th Cir. 1987), argues that "any process of service could be amended" unless there is material prejudice to the person being served. *Curry v. Heard* does not interpret a 30-day mandatory service of process requirement like the one at issue here or suggest that

---

[27] Tex. Gov't Code § 311.021(2) (it is presumed that in enacting a statute the legislature intended for all of it to be effective).

[28] Appellant's Brief at 5, 6, 9.

"undue harm" is a proper consideration when one fails to follow a mandatory procedure. Moreover, *Curry v. Heard* involved "the application and adaptation of Texas tolling [of a statute of limitations] doctrine . . . to the context of federal court procedure." *Id*. at 131. Under that doctrine, tolling of the statute of limitations occurs if citation is issued and served after the statute of limitations has run only if the plaintiff has used diligence and amended service pursuant to Federal Rule 4(h). *Id*. at 132. Since Federal Rule 4(h) does not apply here, the opportunity to cure that it provides is not applicable and thus the case is not apt.

## G. AC Interests claims but does not show it has a vested property right the in Emission Reduction Credits that it seeks.

AC Interests claims it has a vested property right in the Emission Reduction Credits that the Commission denied.[29] It cites no authority that a hoped-for ERC is a vested property right. The Commission rules that authorize ERCs say that an ERC

---

[29] Appellant's Brief at 11.

AC Interests's briefing on this point is inadequate. When a party inadequately briefs a point, it waives it. *See Helle v. Hightower*, 735 S.W.2d 650, 654 (Tex. App.—Austin 1987, writ denied) (complaint is waived on appeal when inadequately presented or unsupported by analysis or discussion); *Balistreri-Amrhein v. AHI*, No. 05–09–01377–CV, 2012 WL 3100775, at * 1 (Tex. App.—Dallas July 31, 2012, pet. denied) (mem.op.) (same); *Taylor v. Meador,* 326 S.W.3d 682, 684 (Tex. App.—El Paso 2010, no pet.) (same); see also Tex. R. App. P. 38.1(i) (stating brief must contain clear and concise argument for contentions made with appropriate citations to record and authorities).

18

that has been granted "does not constitute a a property right."[30] 30 Tex. Admin. Code § 101.302(i). Certainly, then, one that has been applied for but denied cannot be a property right.[31]

Even if a hoped-for ERC were a vested property right, AC Interests was still obligated to follow statutory requirements for maintaining its suit. *Tex. Comm'n on Envtl. Quality v. Kelsoe*, 286 S.W.3d 91, 97 (Tex. App.—Austin 2009, pet. denied) (when statute provides a right to judicial review of agency decision, even a person raising constitutional claims must comply with statute's requirements).

## CONCLUSION AND PRAYER

For the reasons set out in this brief, the Commission respectfully requests that this Court affirm the judgment of the district court dismissing this case.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

---

[30] TCEQ's rules such as 30 TAC § 305.66 and 30 TAC § 305.122 say essentially the same thing about permits that it issues. For example, the latter says about permits issued by the Commission, "A permit issued within the scope of this subchapter does not convey any property rights of any sort, nor any exclusive privilege, and does not become a vested right in the permittee."

[31] Whether or not a person is merely seeking a permit to dispose of solid waste on his property or has been granted one, he does not have a property interest or vested right in the permit or in disposing of solid waste. *Hallco Texas, Inc. v. McMullen Cnty.*, No. 04-96-00681-CV, 1997 WL 184719, *6 (Tex. App.—San Antonio Apr. 16, 1997, no pet.) (not designated for publication).

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

JON NIERMANN
Chief, Environmental Protection Division

*/s/ Cynthia Woelk*
CYNTHIA WOELK
Assistant Attorney General
State Bar No. 21836525
Cynthia.Woelk@texasattorneygeneral.gov

Office of the Attorney General
Environmental Protection Division. (MC-066)
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR APPELLEE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

## CERTIFICATE OF COMPLIANCE

I certify that this brief, not counting the portions properly excepted as shown in Texas Rule of Appellate Procedure 9.4(i)(1), contains 4,377 words according to the word count of the computer program used to prepare the document. It therefore complies with the word limit found in Tex. R. App. P. 9.4(i)(2)(B).

*/s/ Cynthia Woelk*
CYNTHIA WOELK

20

## CERTIFICATE OF SERVICE

I certify that on this 9th day of July, 2015, a true and correct copy of the foregoing brief has been served upon the following counsel by electronic serve through the electronic filing manager as indicated below:

***Attorney for Appellant***:

William Smalling
The Law Office of C. William Smalling, PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600
Houston, Texas 77056
Tel: (713) 513-7153
Fax: (866) 738-0042
bsmalling@billsmallinglaw.com

*/s/ Cynthia Woelk*
CYNTHIA WOELK

# APPENDIX
# TABLE OF CONTENTS

**Tab**

1      District Court's Order of Dismissal

2      Statues

        Tex. Water Code
           § 5.351
           § 5.353

        Tex. Gov't Code
           § 311.021

        Tex. Health and Safety Code (Solid Waste Disposal Act)
           § 361.321

        Tex. Health and Safety Code (Clean Air Act)
           § 382.001
           § 382.011
           § 382.017
           § 382.032

3      Rules

        30 Tex. Admin. Code
           § 101.302
           § 101.303
           § 101.306
           § 305.66
           § 305.122

# TAB 1

District Court's Order of Dismissal

Filed in The District Court
of Travis County, Texas

MAR 0 4 2015

At_____2:41_____M.
Velva L. Price, District Clerk

Cause No. D-1-GN-14-005160

| | | |
|---|---|---|
| AC INTERESTS, L.P., FORMERLY AMERICAN COATINGS, L.P., <br> Plaintiff, | § <br> § <br> § <br> § | IN THE DISTRICT COURT |
| v. | § <br> § | OF TRAVIS COUNTY, TEXAS |
| TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, <br> Defendant. | § <br> § <br> § <br> § | 53RD JUDICIAL DISTRICT |

**ORDER OF DISMISSAL**

On March 4, 2015, the Court heard TCEQ's Rule 91a Motion to Dismiss. The parties appeared through counsel. After considering the pleadings and the arguments of counsel, the Court finds that AC Interests, L.P. is not entitled to the relief it seeks and that the motion should be granted. The Court also finds that this action is against a governmental entity.

It is, therefore, ORDERED that this cause is dismissed.

If it further ORDERED that each party is to bear its own costs.

This order resolves all the claims of all the parties and is final and appealable.

Signed: _March 4, 2015_.

_____
Judge Presiding

# TAB 2

Statutes


**C**

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Water Code (Refs & Annos)
    Title 2. Water Administration (Refs & Annos)
      Subtitle A. Executive Agencies
        Chapter 5. Texas Commission on Environmental Quality (Refs & Annos)
          Subchapter I. Judicial Review
            **§ 5.351. Judicial Review of Commission Acts**

(a) A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or suspend the act of the commission.

(b) A person affected by a ruling, order, or decision of the commission must file his petition within 30 days after the effective date of the ruling, order, or decision. A person affected by an act other than a ruling, order, or decision must file his petition within 30 days after the date the commission performed the act.

CREDIT(S)

Amended by Acts 1985, 69th Leg., ch. 795, § 1.001, eff. Sept. 1, 1985.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Water Code (Refs & Annos)
    Title 2. Water Administration (Refs & Annos)
      Subtitle A. Executive Agencies
        Chapter 5. Texas Commission on Environmental Quality (Refs & Annos)
          Subchapter I. Judicial Review
            **§ 5.353. Diligent Prosecution of Suit**

The plaintiff shall prosecute with reasonable diligence any suit brought under Section 5.351 or 5.352 of this code. If the plaintiff does not secure proper service of process or does not prosecute his suit within one year after it is filed, the court shall presume that the suit has been abandoned. The court shall dismiss the suit on a motion for dismissal made by the attorney general unless the plaintiff after receiving due notice can show good and sufficient cause for the delay.

CREDIT(S)

Amended by Acts 1985, 69th Leg., ch. 795, § 1.001, eff. Sept. 1, 1985.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code (Refs & Annos)
    Title 3. Legislative Branch (Refs & Annos)
      Subtitle B. Legislation
        Chapter 311. Code Construction Act (Refs & Annos)
          Subchapter C. Construction of Statutes (Refs & Annos)
           **§ 311.021. Intention in Enactment of Statutes**

In enacting a statute, it is presumed that:

  (1) compliance with the constitutions of this state and the United States is intended;

  (2) the entire statute is intended to be effective;

  (3) a just and reasonable result is intended;

  (4) a result feasible of execution is intended; and

  (5) public interest is favored over any private interest.

CREDIT(S)

Acts 1985, 69th Leg., ch. 479, § 1, eff. Sept. 1, 1985.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Health and Safety Code (Refs & Annos)
    Title 5. Sanitation and Environmental Quality (Refs & Annos)
      Subtitle B. Solid Waste, Toxic Chemicals, Sewage, Litter, and Water (Refs & Annos)
        Chapter 361. Solid Waste Disposal Act (Refs & Annos)
          Subchapter K. Appeals; Joinder of Parties (Refs & Annos)

→→ **§ 361.321. Appeals**

(a) A person affected by a ruling, order, decision, or other act of the commission may appeal the action by filing a petition in a district court of Travis County.

(b) A person affected by a ruling, order, decision, or other act of a county, or of a political subdivision exercising the authority granted by Section 361.165, may appeal by filing a petition in a district court with jurisdiction in the county or political subdivision.

(c) Except as provided by Section 361.322(a), the petition must be filed not later than the 30th day after the date of the ruling, order, decision, or other act of the governmental entity whose action is appealed. Service of citation must be accomplished not later than the 30th day after the date on which the petition is filed.

(d) The plaintiff shall pursue the action with reasonable diligence. The court shall presume that the action has been abandoned if the plaintiff does not prosecute the action within one year after it is filed and shall dismiss the suit on a motion for dismissal made by the governmental entity whose action is appealed unless the plaintiff, after receiving notice, can show good and sufficient cause for the delay.

(e) Except as provided by Section 361.322(e), in an appeal from an action of the commission, a county, or a political subdivision exercising the authority granted by Section 361.165, the issue is whether the action is invalid, arbitrary, or unreasonable.

CREDIT(S)

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1990, 71st Leg., 6th C.S., ch. 10, art. 2, § 28, eff. Sept. 6, 1990; Acts 1995, 74th Leg., ch. 76, § 11.71, eff. Sept. 1, 1995.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Health and Safety Code (Refs & Annos)
    Title 5. Sanitation and Environmental Quality (Refs & Annos)
      Subtitle C. Air Quality
        Chapter 382. Clean Air Act (Refs & Annos)
          Subchapter A. General Provisions (Refs & Annos)
            **§ 382.001. Short Title**

This chapter may be cited as the Texas Clean Air Act.

CREDIT(S)

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Health and Safety Code (Refs & Annos)
    Title 5. Sanitation and Environmental Quality (Refs & Annos)
      Subtitle C. Air Quality
        Chapter 382. Clean Air Act (Refs & Annos)
          Subchapter B. Powers and Duties of Commission (Refs & Annos)
            **§ 382.011. General Powers and Duties**

(a) The commission shall:


  (1) administer this chapter;


  (2) establish the level of quality to be maintained in the state's air; and


  (3) control the quality of the state's air.


(b) The commission shall seek to accomplish the purposes of this chapter through the control of air contaminants by all practical and economically feasible methods.


(c) The commission has the powers necessary or convenient to carry out its responsibilities.


CREDIT(S)

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1995, 74th Leg., ch. 76, § 11.143, eff. Sept. 1, 1995.


Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Health and Safety Code (Refs & Annos)
    Title 5. Sanitation and Environmental Quality (Refs & Annos)
      Subtitle C. Air Quality
        Chapter 382. Clean Air Act (Refs & Annos)
          Subchapter B. Powers and Duties of Commission (Refs & Annos)

**§ 382.017. Rules**

(a) The commission may adopt rules. The commission shall hold a public hearing before adopting a rule consistent with the policy and purposes of this chapter.

(b) If the rule will have statewide effect, notice of the date, time, place, and purpose of the hearing shall be published one time at least 20 days before the scheduled date of the hearing in at least three newspapers, the combined circulation of which will, in the commission's judgment, give reasonable circulation throughout the state. If the rule will have effect in only a part of the state, the notice shall be published one time at least 20 days before the scheduled date of the hearing in a newspaper of general circulation in the area to be affected.

(c) Any person may appear and be heard at a hearing to adopt a rule. The executive director shall make a record of the names and addresses of the persons appearing at the hearing. A person heard or represented at the hearing or requesting notice of the commission's action shall be sent by mail written notice of the commission's action.

(d) Subsections (a) and (b) notwithstanding, the commission may adopt rules consistent with Chapter 2001, Government Code, if the commission determines that the need for expeditious adoption of proposed rules requires use of those procedures.

(e) The terms and provisions of a rule adopted by the commission may differentiate among particular conditions, particular sources, and particular areas of the state. In adopting a rule, the commission shall recognize that the quantity or characteristic of air contaminants or the duration of their presence in the atmosphere may cause a need for air control in one area of the state but not in other areas. In this connection, the commission shall consider:

  (1) the factors found by it to be proper and just, including existing physical conditions, topography, population, and prevailing wind direction and velocity; and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(2) the fact that a rule and the degrees of conformance with the rule that may be proper for an essentially residential area of the state may not be proper for a highly developed industrial area or a relatively unpopulated area.

(f) Except as provided by Sections 382.0171-382.021 or to comply with federal law or regulations, the commission by rule may not specify:

(1) a particular method to be used to control or abate air pollution;

(2) the type, design, or method of installation of equipment to be used to control or abate air pollution; or

(3) the type, design, method of installation, or type of construction of a manufacturing process or other kind of equipment.

CREDIT(S)

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1991, 72nd Leg., ch. 14, § 137, eff. Sept. 1, 1991; Acts 1991, 72nd Leg., 1st C.S., ch. 3, § 2.33, eff. Sept. 1, 1991; Acts 1995, 74th Leg., ch. 76, §§ 5.95(49), 11.145, eff. Sept. 1, 1995.

REVISOR'S NOTE

2010 Main Volume

(1) The revised law omits the reference to "regulations" for the reason stated in the revisor's note under Section 382.015.

(2) Section 3.09(a) of the source law, which took effect in 1969, authorizes the board to "amend any rule it makes." Section 3.09(b) of the source law requires the board to hold a public hearing before adopting a rule "or any amendment or repeal thereof." Implied in an agency's authority to adopt rules is the agency's authority to amend or revoke rules. In fact, the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes), which provides uniform procedures for state agencies, defines "rule" to include the amendment or repeal of a prior rule. Rulemaking procedures apply to the amendment or repeal of a rule. Therefore, the revised law omits as unnecessary the provisions in the source law authorizing the board to amend rules and requiring the board to hold a public hearing before amending or repealing rules.

(3) Sections 3.09(b) and (d) of the source law, which took effect in 1969, provide procedures for the adoption of rules. The revised law omits those procedures as impliedly repealed by the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes). That act provides minimum standards of uniform practice and procedure for all state agencies, and includes rulemaking procedures. The APTRA took effect in 1976, and repealed Article 6252-13. Section 22 of the APTRA repeals all laws in conflict.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) The revised law retains Section 3.09(c) of the source law relating to appearances at a hearing on a rule. That provision was added in 1985 and therefore supersedes the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes).

## HISTORICAL AND STATUTORY NOTES

2010 Main Volume

Prior Laws:

Acts 1965, 59th Leg., p. 1583, ch. 687.

Acts 1967, 60th Leg., p. 1941, ch. 727.

Acts 1969, 61st Leg., p. 817, ch. 273.

Acts 1985, 69th Leg., ch. 637, § 20.

Acts 1989, 71st Leg., ch. 1190, § 2.

Vernon's Ann.Civ.St. arts. 4477-4; 4477-5, §§ 3.09(a) to (c), 3.10(a), (b).

## LAW REVIEW COMMENTARIES

The new organic "Texas tea"?: National energy security implications of a "clean fuel" regulatory ban on Texas biodiesel. Brandon E. Durrett, 40 Tex. Tech L. Rev. 1001 (Summer 2008).

## RESEARCH REFERENCES

2015 Electronic Update

Encyclopedias

TX Jur. 3d Conservation and Pollution Laws § 186, Factors Considered When Developing Rules.

TX Jur. 3d Conservation and Pollution Laws § 187, Limits on Rulemaking Powers.

Treatises and Practice Aids

Civins, Hall & Sahs, 45 Tex. Prac. Series § 5:2, Texas Clean Air Act.

## NOTES OF DECISIONS

In general 1

1. In general

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Lawn-maintenance rules adopted by Texas Commission on Environmental Quality (TCEQ) for county in metropolitan area that Environmental Protection Agency (EPA) had designated as not satisfying ozone air quality standards did not violate Health and Safety Code restriction against specifying a particular method to be used to control or abate air pollution, where rules were promulgated in order to comply with federal law, and thus rules were exempt from such restriction. Brazoria County v. Texas Com'n on Environmental Quality (App. 3 Dist. 2004) 128 S.W.3d 728. Environmental Law ⚷ 287

V. T. C. A., Health & Safety Code § 382.017, TX HEALTH & S § 382.017

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT



**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Health and Safety Code (Refs & Annos)
    Title 5. Sanitation and Environmental Quality (Refs & Annos)
      Subtitle C. Air Quality
        ↰▤ Chapter 382. Clean Air Act (Refs & Annos)
          ↰▤ Subchapter B. Powers and Duties of Commission (Refs & Annos)
          →→ **§ 382.032. Appeal of Commission Action**

(a) A person affected by a ruling, order, decision, or other act of the commission or of the executive director, if an appeal to the commission is not provided, may appeal the action by filing a petition in a district court of Travis County.

(b) The petition must be filed within 30 days after the date of the commission's or executive director's action or, in the case of a ruling, order, or decision, within 30 days after the effective date of the ruling, order, or decision. If the appeal relates to the commission's failure to take final action on an application for a federal operating permit, a reopening of a federal operating permit, a revision to a federal operating permit, or a permit renewal application for a federal operating permit in accordance with Section 382.0542(b), the petition may be filed at any time before the commission or the executive director takes final action.

(c) Service of citation on the commission must be accomplished within 30 days after the date on which the petition is filed. Citation may be served on the executive director or any commission member.

(d) The plaintiff shall pursue the action with reasonable diligence. If the plaintiff does not prosecute the action within one year after the date on which the action is filed, the court shall presume that the action has been abandoned. The court shall dismiss the suit on a motion for dismissal made by the attorney general unless the plaintiff, after receiving due notice, can show good and sufficient cause for the delay.

(e) In an appeal of an action of the commission or executive director other than cancellation or suspension of a variance, the issue is whether the action is invalid, arbitrary, or unreasonable.

(f) An appeal of the cancellation or suspension of a variance must be tried in the same manner as appeals from the justice court to the county court.

CREDIT(S)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1993, 73rd Leg., ch. 485, § 5, eff. June 9, 1993; Acts 1995, 74th Leg., ch. 76, § 11.155, eff. Sept. 1, 1995.

Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

# TAB 3

Rules


Texas Administrative Code Currentness
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental Quality
      Chapter 101. General Air Quality Rules
        Subchapter H. Emissions Banking and Trading
          ⌐▤ Division 1. Emission Credit Program
          ➡➡ **§ 101.302. General Provisions**

(a) Applicable pollutants.

(1) An emission reduction credit (ERC) may be generated from a reduction of a criteria pollutant, excluding lead, or a precursor of a criteria pollutant for which an area is designated nonattainment. An ERC generated from the reduction of one pollutant or precursor may not be used to meet the requirements for another pollutant or precursor, except as provided by §101.306(d) of this title (relating to Emission Credit Use).

(2) Reductions of criteria pollutants, excluding lead, or precursors of criteria pollutants for which an area is designated nonattainment, may qualify as mobile emission reduction credits (MERCs). MERCs generated from reductions of one pollutant may not be used to meet the requirements for another pollutant, unless urban airshed modeling demonstrates that one ozone precursor may be substituted for another, subject to executive director and United States Environmental Protection Agency (EPA) approval.

(b) Eligible generator categories. The following categories are eligible to generate emission credits:

(1) facilities, including area sources;

(2) mobile sources; and

(3) any facility, including area sources, or mobile source associated with actions by federal agencies under 40 Code of Federal Regulations Part 93, Subpart B, Determining Conformity of General Federal Actions to State or Federal Implementation Plans.

(c) Emission credit requirements.

(1) An ERC is a certified emission reduction that:

(A) must be enforceable, permanent, quantifiable, real, and surplus;

(B) must be surplus at the time it is created, as well as when it is used; and

(C) must occur after the year used to determine the state implementation plan (SIP) emissions for the facility.

(2) Mobile emission reduction credits are certified reductions that meet the following requirements:

(A) reductions must be enforceable, permanent, quantifiable, real, and surplus;

(B) the certified reduction must be surplus at the time it is created, as well as when it is used;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.302

(C) in order to become certified, the reduction must have occurred after the most recent year of emissions inventory used in the SIP;

(D) the mobile source's annual emissions prior to the emission credit application must have been represented in the emissions inventory used in the SIP; and

(E) the mobile sources must have been included in the attainment demonstration baseline emissions inventory.

(3) Emission reductions from a facility or mobile source that are certified as emission credits under this division cannot be recertified in whole or in part as credits under another division within this subchapter.

(d) Protocol.

(1) All generators or users of emission credits shall use a protocol that has been submitted by the executive director to the EPA for approval, if existing for the applicable facility or mobile source, to measure and calculate baseline emissions. If the generator or user wishes to deviate from a protocol submitted by the executive director, EPA approval is required before the protocol can be used. Protocols must be used as follows.

(A) The owner or operator of a facility subject to the emission specifications under §§117.110, 117.310, 117.410, 117.1010, 117.1210, 117.1310, 117.2010, or 117.2110 of this title (relating to Emission Specifications for Attainment Demonstration; Emission Specifications for Eight-Hour Attainment Demonstration; and Emission Specifications) shall use the testing and monitoring methodologies required under Chapter 117 of this title (relating to Control of Air Pollution from Nitrogen Compounds) to show compliance with the emission specification for that pollutant.

(B) The owner or operator of a facility subject to the requirements under Chapter 115 of this title (relating to Control of Air Pollution from Volatile Organic Compounds) shall use the testing and monitoring methodologies required under Chapter 115 of this title to show compliance with the applicable requirements.

(C) The executive director may approve the use of a methodology approved by the EPA to quantify emissions from the same type of facility or mobile source.

(D) Except as specified in subparagraph (C) of this paragraph, if the executive director has not submitted a protocol for the applicable facility or mobile source to the EPA for approval, the following requirements apply:

(i) the amount of emission credits from a facility or mobile source, in tons per year, will be determined and certified based on quantification methodologies at least as stringent as the methods used to demonstrate compliance with any applicable requirements for the facility or mobile source;

(ii) the generator shall collect relevant data sufficient to characterize the facility's or mobile source's emissions of the affected pollutant and the facility's or mobile source's activity level for all representative phases of operation in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.302

order to characterize the facility's or mobile source's baseline emissions;

(iii) the owner or operator of a facility with a continuous emissions monitoring system or predictive emissions monitoring system in place shall use this data in quantifying emissions;

(iv) the chosen quantification protocol must be made available for public comment for a period of 30 days and must be viewable on the commission's website;

(v) the chosen quantification protocol and any comments received during the public comment period must be submitted to the EPA for a 45-day adequacy review; and

(vi) quantification protocols may not be accepted for use with this division if the executive director receives a letter objecting to the use of the protocol from the EPA during the 45-day adequacy review or the EPA adopts disapproval of the protocol in the Federal Register.

(2) If the monitoring and testing data specified in paragraph (1) of this subsection is missing or unavailable, the generator or user shall determine the facility's emissions for the period of time the data is missing or unavailable using the most conservative method for replacing the data and these listed methods in the following order:

(A) continuous monitoring data;

(B) periodic monitoring data;

(C) testing data;

(D) manufacturer's data;

(E) EPA Compilation of Air Pollution Emission Factors (AP-42), September 2000; or

(F) material balance.

(3) When quantifying actual emissions in accordance with paragraph (2) of this subsection, the generator or user shall submit the justification for not using the methods in paragraph (1) of this subsection and submit the justification for the method used.

(e) Credit certification.

(1) The amount of emission credits in tons per year will be determined and certified to the nearest tenth of a ton per year.

(2) The executive director shall review an application for certification to determine the credibility of the reductions. Each ERC certified will be assigned a certificate number. A new number will be assigned when an ERC is traded or partly used. Reductions determined to be creditable and in compliance with all other requirements of this division will be certified by the executive director.

(3) The applicant will be notified in writing if the executive director denies the emission credit application. The applicant may submit a revised application in accordance with the requirements of this division. If a facility's or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.302

mobile source's actual emissions exceed any applicable local, state, or federal requirement, reductions of emissions exceeding the requirement may not be certified as emission credits. An application for certification of emission credit from reductions quantified under subsection (d)(1)(D) of this section may only be approved after the EPA's 45-day adequacy review of the protocol.

(f) Geographic scope. Except as provided in §101.305 of this title (relating to Emission Reductions Achieved Outside the United States), only emission reductions generated in nonattainment areas can be certified. An emission credit must be used in the nonattainment area in which it is generated unless the user has obtained prior written approval of the executive director and the EPA; and

(1) a demonstration has been made and approved by the executive director and the EPA to show that the emission reductions achieved in another county or state provide an improvement to the air quality in the county of use; or

(2) the emission credit was generated in a nonattainment area that has an equal or higher nonattainment classification than the nonattainment area of use, and a demonstration has been made and approved by the executive director and the EPA to show that the emissions from the nonattainment area where the emission credit is generated contribute to a violation of the national ambient air quality standard in the nonattainment area of use.

(g) Recordkeeping. The generator shall maintain a copy of all notices and backup information submitted to the executive director for a minimum of five years. The user shall maintain a copy of all notices and backup information submitted to the executive director from the beginning of the use period and for at least five years after. The user shall make the records available upon request to representatives of the executive director, EPA, and any local enforcement agency. The records must include, but not necessarily be limited to:

(1) the name, emission point number, and facility identification number of each facility or any other identifying number for each mobile source using emission credits;

(2) the amount of emission credits being used by each facility or mobile source; and

(3) the certificate number of emission credits used for each facility or mobile source.

(h) Public information. All information submitted with notices, reports, and trades regarding the nature, quantity, and sales price of emissions associated with the use, generation, and transfer of an emission credit is public information and may not be submitted as confidential. Any claim of confidentiality for this type of information, or failure to submit all information, may result in the rejection of the emission credit application. All nonconfidential information will be made available to the public as soon as practicable.

(i) Authorization to emit. An emission credit created under this division is a limited authorization to emit the pollutants identified in subsection (a) of this section, unless otherwise defined, in accordance with the provisions of this section, 42 United States Code, §§7401 et seq., and Texas Health and Safety Code, Chapter 382, as well as regulations promulgated thereunder. An emission credit does not constitute a property right. Nothing in this division may be construed to limit the authority of the commission or the EPA to terminate or limit such authorization.

(j) Program participation. The executive director

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.302

has the authority to prohibit a person from participating in emission credit trading either as a generator or user, if the executive director determines that the person has violated the requirements of the program or abused the privileges provided by the program.

(k) Compliance burden. A user may not transfer their compliance burden and legal responsibilities to a third-party participant. A third-party participant may only act in an advisory capacity to the user.

(l) Credit ownership. The owner of the initial emission credit shall be the owner or operator of the facility or mobile source creating the emission reduction. The executive director may approve a deviation from this subsection considering factors such as, but not limited to:

> (1) whether an entity other than the owner or operator of the facility or mobile source incurred the cost of the emission reduction strategy; or

> (2) whether the owner or operator of the facility or mobile source lacks the potential to generate 1/10 ton of credit.

**Source:** The provisions of this §101.302 adopted to be effective January 17, 2003, 28 TexReg 83; amended to be effective December 2, 2004, 29 TexReg 11038; amended to be effective October 26, 2006, 31 TexReg 8684; amended to be effective August 16, 2007, 32 TexReg 4985; amended to be effective June 25, 2015, 40 TexReg 3848.

30 TAC § 101.302, 30 TX ADC § 101.302

Current through 40 Tex.Reg. No. 4070, dated June 19, 2015, as effective on or before June 26, 2015

Copr. (C) 2015. All rights reserved.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Tex. Admin. Code tit. 30, § 101.303

Texas Administrative Code Currentness
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental
    Quality
      Chapter 101. General Air Quality Rules
        Subchapter H. Emissions Banking and
        Trading
          ⌐▤ Division 1. Emission Credit Program
          ➡➡ **§ 101.303. Emission Reduction
          Credit Generation and Certification**

(a) Emission reduction strategy.

(1) An emission reduction credit (ERC) may be generated using one of the following strategies or any other method that is approved by the executive director:

(A) the permanent shutdown of a facility that causes a loss of capability to produce emissions;

(B) the installation and operation of pollution control equipment that reduces emissions below baseline emissions for the facility;

(C) a change in a manufacturing process that reduces emissions below baseline emissions for the facility;

(D) a permanent curtailment in production that reduces the facility's capability to produce emissions; or

(E) pollution prevention projects that produce surplus emission reductions.

(2) An ERC may not be generated from the following strategies:

(A) reductions from the shifting of activity from one facility to another facility at the same site;

(B) that portion of reductions funded through state or federal programs, unless specifically allowed under that program; or

(C) reductions from a facility without state implementation plan (SIP) emissions.

(b) ERC baseline emissions.

(1) The baseline emissions may not exceed the facility's SIP emissions.

(2) The activity and emission rate used to calculate the facility's historical adjusted emissions must be determined from the same two consecutive calendar years selected from the ten consecutive years immediately before the emission reduction is achieved.

(3) For a facility in existence less than 24 months or not having two complete calendar years of activity data, a shorter period of not less than 12 months may be considered by the executive director.

(c) ERC calculation. The quantity of ERCs is determined by subtracting the facility's strategic emissions from the facility's baseline emissions, as calculated in the following equation.

Tabular or graphic material set at this point is not

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.303

displayable.

(d) ERC certification.

(1) The owner or operator of a facility with potential ERCs shall submit to the executive director an application for ERCs no more than two years after the implementation of the emission reduction strategy. Applications will be reviewed to determine the credibility of the reductions. Reductions determined to be creditable will be certified by the executive director and an ERC will be issued to the owner.

(2) ERCs must be quantified in accordance with §101.302(d) of this title (relating to General Provisions). The executive director shall have the authority to inspect and request information to assure that the emissions reductions have actually been achieved.

(3) An application for ERCs must include, but is not limited to, a completed application form specified by the executive director signed by an authorized representative of the applicant along with the following information for each pollutant reduced at each applicable facility:

(A) a complete description of the emission reduction strategy;

(B) the amount of ERCs generated;

(C) for volatile organic compound reductions, a list of the specific compounds reduced;

(D) documentation supporting the activity, emission rate, historical adjusted emissions, SIP emissions, baseline emissions, and strategic emissions;

(E) emissions inventory data for each of the years used to determine the SIP emissions and historical adjusted emissions;

(F) the most stringent emission rate and the most stringent emission level, considering all applicable local, state, and federal requirements;

(G) a complete description of the protocol used to calculate the emission reduction generated; and

(H) the actual calculations performed by the generator to determine the amount of ERCs generated.

(4) ERCs will be made enforceable by one of the following methods:

(A) amending or altering a new source review permit to reflect the emission reduction and set a new maximum allowable emission limit;

(B) voiding a new source review permit when a facility has been shut down; or

(C) for any facility without a new source review permit that is otherwise authorized by commission rule, certifying the emission reduction and the new maximum emission limit on a Certification of Emission Limits (Form APD-CERT) or other form considered equivalent by the executive director or an agreed order.

**Source:** The provisions of this §101.303 adopted to be effective January 17, 2003, 28 TexReg 83; amended to be effective December 2, 2004, 29 TexReg 11038; amended to be effective June 25,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.303

2015, 40 TexReg 3848.

30 TAC § 101.303, 30 TX ADC § 101.303

Current through 40 Tex.Reg. No. 4070, dated June 19, 2015, as effective on or before June 26, 2015

Copr. (C) 2015. All rights reserved.

END OF DOCUMENT



Tex. Admin. Code tit. 30, § 101.306

Texas Administrative Code Currentness
   Title 30. Environmental Quality
      Part 1. Texas Commission on Environmental Quality
         Chapter 101. General Air Quality Rules
            Subchapter H. Emissions Banking and Trading
               ⌐▤ Division 1. Emission Credit Program
               ➔➔ **§ 101.306. Emission Credit Use**

(a) Uses for emission credits. Unless precluded by a commission order or a condition or conditions within an authorization under the same commission account number, emission credits may be used as the following:

   (1) offsets for a new source, as defined in §101.1 of this title (relating to Definitions), or major modification to an existing source;

   (2) mitigation offsets for action by federal agencies under 40 Code of Federal Regulations Part 93, Subpart B, Determining Conformity of General Federal Actions to State or Federal Implementation Plans;

   (3) an alternative means of compliance with volatile organic compound and nitrogen oxides reduction requirements to the extent allowed in Chapters 115 and 117 of this title (relating to Control of Air Pollution from Volatile Organic Compounds; and Control of Air Pollution from Nitrogen Compounds);

   (4) reductions certified as emission credits may be used in netting by the original applicant, if not used, sold, reserved for use, or otherwise relied upon, as provided by Chapter 116, Subchapter B of this title (relating to New Source Review Permits); or

   (5) compliance with other requirements as allowed in any applicable local, state, and federal requirement.

(b) Credit use calculation.

   (1) The number of emission credits needed by the user for offsets shall be determined as provided by Chapter 116, Subchapter B of this title.

   (2) For emission credits used in compliance with Chapter 115 or 117 of this title, the number of emission credits needed should be determined according to the following equation plus an additional 10% to be retired as an environmental contribution.

Tabular or graphic material set at this point is not displayable.

   (3) For emission credits used to comply with §§117.123, 117.320, 117.323, 117.423, 117.1020, or 117.1220 of this title (relating to Source Cap; and System Cap), the number of emission credits needed for increasing the 30-day rolling average emission cap or maximum daily cap should be determined according to the following equation plus an additional 10% to be retired as an environmental contribution.

Tabular or graphic material set at this point is not displayable.

   (4) Emission credits used for compliance with any other applicable program should be de-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

termined in accordance with the requirements of that program and must contain at least 10% extra to be retired as an environmental contribution, unless otherwise specified by that program.

(c) Notice of intent to use emission credits.

(1) Application to use ERCs. The executive director will not accept an application to use ERCs before the ERC is available in the compliance account for the site where it will be used. If the ERC will be used for offsets, the executive director will not accept the ERC application before the applicable permit application is administratively complete.

(A) The user shall submit a completed application at least 90 days before the start of operation for an ERC used as offsets in a permit in accordance with Chapter 116 of this title (relating to Control of Air Pollution by Permits for New Construction or Modification).

(B) The user shall submit a completed application at least 90 days before the planned use of an ERC for compliance with the requirements of Chapter 115 or 117 of this title or other programs.

(C) If the executive director approves the ERC use, the date the application is submitted will be considered the date the ERC is used.

(2) Application to use mobile emission reduction credits (MERCs).

(A) For MERCs which are to be used as offsets in a New Source Review permit in accordance with Chapter 116 of this title, the MERCs must be identified prior to permit issuance. Prior to construction, the offsets must be provided through submittal of a completed application form specified by the executive director.

(B) For emission credits that are to be used for compliance with the requirements of Chapter 115 or 117 of this title or other programs, the user must submit a completed application at least 90 days prior to the planned use of the MERC. MERCs may be used only after the executive director grants approval of the notice of intent to use. The user must also keep a copy of the notice and all backup in accordance with §101.302(g) of this title (relating to General Provisions).

(3) If the executive director denies the facility or mobile source's use of emission credits, any affected person may file a motion for reconsideration within 60 days of the denial. Notwithstanding the applicability provisions of §50.31(c)(7) of this title (relating to Purpose and Applicability), the requirements of §50.39 of this title (relating to Motion for Reconsideration) shall apply. Only an affected person may file a motion for reconsideration.

(d) Inter-pollutant use of ERCs. With prior approval from the executive director and the United States Environmental Protection Agency, a nitrogen oxides or volatile organic compound ERC may be used to meet the offset requirements for the other ozone precursor if photochemical modeling demonstrates that the overall air quality and the regulatory design value in the nonattainment area of use will not be adversely affected by the substitution.

**Source:** The provisions of this §101.306 adopted to be effective January 17, 2003, 28 TexReg 83;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 101.306

amended to be effective October 26, 2006, 31 TexReg 8684; amended to be effective August 16, 2007, 32 TexReg 4985; amended to be effective June 25, 2015, 40 TexReg 3848.

30 TAC § 101.306, 30 TX ADC § 101.306

Current through 40 Tex.Reg. No. 4070, dated June 19, 2015, as effective on or before June 26, 2015

Copr. (C) 2015. All rights reserved.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 305.66



Texas Administrative Code Currentness
   Title 30. Environmental Quality
     Part 1. Texas Commission on Environmental Quality
       Chapter 305. Consolidated Permits
         Subchapter D. Amendments, Renewals, Transfers, Corrections, Revocation, and Suspension of Permits
           ➡➡ **§ 305.66. Permit Denial, Suspension, and Revocation**

(a) A permit or other order of the commission does not become a vested right and may be suspended or revoked for good cause at any time by order of the commission after opportunity for a public hearing is given. Good cause includes, but is not limited to, the following:

    (1) the permittee has failed or is failing to comply with the conditions of the permit or a commission order, including failure to construct, during the life of the permit, facilities necessary to conform with the terms and conditions of the permit;

    (2) the permit or the operations thereunder have been abandoned;

    (3) the permit or other order is no longer needed by the permittee;

    (4) the permittee's failure in the application or hearing process to disclose fully all relevant facts, or the permittee's misrepresentation of relevant facts at any time;

    (5) a determination that the permitted activity endangers human health or safety or the environment to such an extent that permit termination is necessary to prevent further harm;

    (6) the facility is being operated by a transferee before commission approval of the transfer;

    (7) for underground injection wells, a determination that the waste being injected is a hazardous waste as defined under § 335.1 of this title (relating to Definitions) either because the definition has been revised, or because a previous determination has been changed;

    (8) for Class III injection wells, failure to achieve satisfactory restoration progress;

    (9) for radioactive material licenses, any violation of the Texas Radiation Control Act or Chapter 336 of this title (relating to Radioactive Substance Rules), or when conditions are revealed by an application, statement of fact, report, record, inspection, or other means, which would have warranted the commission's refusal to issue a license on an original application; or

    (10) such other cause sufficient to warrant termination or suspension of the authorization.

    (11) the executive director has received notification under § 305.42 and § 305.653 of this title (relating to Application Required; and Applying for a Standard Permit) of a facility owner or operator's intent to be covered by a standard permit.

(b) The authority to discharge waste into or adjacent to the water in the state under a waste dis-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 305.66

charge permit is subject to cancellation or suspension under the Texas Water Code, § 26.084.

(c) The commission may, for good cause, deny, amend, revoke, or suspend, after notice and hearing according to § 305.68 of this title (relating to Action and Notice on Petition for Revocation and Suspension), any permit it issues or has authority to issue for a solid waste storage, processing, or disposal facility, for good cause, for reasons pertaining to public health, air or water pollution, land use, or for violations of the Texas Solid Waste Disposal Act, or any other applicable laws or rules controlling the management of solid waste.

(d) When the executive director determines revocation or suspension proceedings are warranted, a petition requesting appropriate action may be filed by the executive director with the commission. A person affected by the issuance of a permit or other order of the commission may initiate proceedings for revocation or suspension by forwarding a petition to the executive director to be filed with the commission.

(e) If the executive director or an affected person intends to file a petition to revoke or suspend a permit, notice of the intention and a copy of the petition to be filed shall be personally served on or sent by registered or certified mail to the permittee at the last address of record with the commission. This notice shall be given at least 15 days before a petition for revocation or suspension is submitted to the executive director or filed with the commission for further proceedings. Failure to provide such notice shall not be jurisdictional. For radioactive material licenses issued under Chapter 336 of this title (relating to Radioactive Substance Rules), only the executive director may file a petition to revoke or suspend a license.

(f) The commission may deny, suspend for not more than 90 days, or revoke an original or renewal permit if the commission finds after notice and hearing, that:

(1) the permit holder has a record of environmental violations in the preceding five years at the permitted site;

(2) the applicant has a record of environmental violations in the preceding five years at any site owned, operated, or controlled by the applicant;

(3) the permit holder or applicant made a false or misleading statement in connection with an original or renewal application, either in the formal application or in any other written instrument relating to the application submitted to the commission, its officers, or its employees;

(4) the permit holder or applicant is indebted to the state for fees, payment of penalties, or taxes imposed by Title 5, Sanitation and Environmental Quality, of the Texas Health and Safety Code (Vernon 1991) or by a rule of the commission;

(5) the permit holder or applicant is unable to ensure that the management of the hazardous waste management facility conforms or will conform to this title and the rules of the commission.

(g) Before denying, suspending, or revoking a permit under this section, the commission must find:

(1) that a violation or violations are significant and that the permit holder or applicant has not made a substantial attempt to correct the violations; or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 305.66

(2) that the permit holder or applicant is indebted to the state for fees, payment of penalties, or taxes imposed by Title 5, Sanitation and Environmental Quality, of the Texas Health and Safety Code (Vernon 1991) or by rule of the commission.

(h) The commission may not suspend a new commercial hazardous waste management permit on the basis of a failure of a county or a municipality to accept the funds and make the roadway improvements pursuant to § 335.182 of this title (relating to Burden on Public Roadways by a New Commercial Hazardous Waste Management Facility).

(i) For applications for new hazardous waste management facility permits, the commission may deny such an application if it determines that the facility is not compatible with local land use pursuant to § 335.180 of this title (relating to Impact of New Hazardous Waste Management Facilities on Local Land Use).

(j) For applications for new commercial hazardous waste management facility permits, the commission may not deny such an application on the basis of a failure of a county or a municipality to accept the funds and make the roadway improvements pursuant to § 335.182 of this title.

(k) For applications for any new commercial hazardous waste management facility permits, the commission shall not grant such an application if the applicant is without experience in the particular hazardous waste management technology and has not conspicuously stated that lack of experience in the application, and the commission shall not grant such an application unless the applicant provides a summary of its experience, pursuant to § 305.50(12)(D) of this title (relating to Additional Requirements for an Application for a Hazardous or Industrial Solid Waste Permit and for a Post-Closure Order). The commission may not deny an application for a new commercial hazardous waste management facility permit solely on the basis of lack of experience of the applicant.

(l) For purposes of this section, the terms "permit holder" and "applicant" include each member of a partnership or association and, with respect to a corporation, each officer and the owner or owners of a majority of the corporate stock, provided such partner or owner controls at least 20% of the permit holder or applicant and at least 20% of another business which operates a solid waste management facility.

**Source:** The provisions of this §305.66 adopted to be effective June 19, 1986, 11 TexReg 2594; amended to be effective July 5, 1989, 14 TexReg 3046; amended to be effective November 7, 1991, 16 TexReg 6051; amended to be effective June 5, 1997, 22 TexReg 4583; amended to be effective October 29, 2009, 34 TexReg 7315.

30 TAC § 305.66, 30 TX ADC § 305.66

Current through 40 Tex.Reg. No. 3730, dated June 12, 2015, as effective on or before June 19, 2015

Copr. (C) 2015. All rights reserved.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 305.122



Texas Administrative Code Currentness
  Title 30. Environmental Quality
    Part 1. Texas Commission on Environmental Quality
      Chapter 305. Consolidated Permits
        Subchapter F. Permit Characteristics and Conditions
          ➡➡ **§ 305.122. Characteristics of Permits**

(a) Compliance with a Resource Conservation and Recovery Act (RCRA) permit during its term constitutes compliance, for purposes of enforcement, with subtitle C of RCRA except for those requirements not included in the permit which:

  (1) become effective by statute;

  (2) are promulgated under 40 Code of Federal Regulations (CFR) Part 268, restricting the placement of hazardous wastes in or on the land;

  (3) are promulgated under 40 CFR Part 264, regarding leak detection systems for new and replacement surface impoundment, waste pile, and landfill units, and lateral expansions of surface impoundment, waste pile, and landfill units. The leak detection system requirements include double liners, construction quality assurance programs, monitoring, action leakage rates, and response action plans, and will be implemented through the Class 1 permit modifications procedures of § 305.69 of this title (relating to Solid Waste Permit Modification at the Request of the Permittee); or

  (4) are promulgated under 40 CFR Part 265,

Subparts AA, BB, or CC limiting air emissions, as adopted by reference under § 335.112 of this title (relating to Standards).

(b) A permit may be modified, revoked and reissued, or terminated during its term for cause as set forth in § 305.62 of this title (relating to Amendments) and § 305.66 of this title (relating to Permit Denial, Suspension, and Revocation), or the permit may be modified upon the request of the permittee as set forth in § 305.69 of this title.

(c) A permit issued within the scope of this subchapter does not convey any property rights of any sort, nor any exclusive privilege, and does not become a vested right in the permittee.

(d) The issuance of a permit does not authorize any injury to persons or property or an invasion of other property rights, or any infringement of state or local law or regulations.

(e) Except for any toxic effluent standards and prohibitions imposed under Clean Water Act (CWA), § 307, and standards for sewage sludge use or disposal under CWA, § 405(d), compliance with a Texas pollutant discharge elimination system (TPDES) permit during its term constitutes compliance, for purposes of enforcement, with the CWA, §§ 301, 302, 306, 307, 318, 403, and 405; however, a TPDES permit may be amended or revoked during its term for cause as set forth in § 305.62 and § 305.66 of this title.

**Source:** The provisions of this §305.122 adopted to be effective June 19, 1986, 11 TexReg 2597; amended to be effective October 8, 1990, 15 TexReg 5492; amended to be effective November 23, 1993, 18 TexReg 8215; amended to be effective February 26, 1996, 21 TexReg 1137; amended to be

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 30, § 305.122

effective November 15, 2001, 26 TexReg 9123;
amended to be effective February 21, 2013, 38
TexReg 970.

30 TAC § 305.122, 30 TX ADC § 305.122

Current through 40 Tex.Reg. No. 3730, dated June
12, 2015, as effective on or before June 19, 2015

Copr. (C) 2015. All rights reserved.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.